## STATE *v.* SIDNEY S. PAUL.

When one convicted in the court of common pleas of a statute offence, upon being called to the bar of the court for sentence, interposes a motion in arrest of judgment, upon the ground that the statute under which he is convicted is void, because repugnant to the constitution of this state and to the constitution and laws of the United States, without bringing upon the record any of the evidence upon which he was convicted, and the case is thereupon, by virtue of the act directing the mode of trying constitutional questions, certified to the supreme court for the decision of such questions; inasmuch, as a motion in arrest raises only those objections which are apparent upon the record, the question before the court is, whether the statute, thus objected to, is so far unconstitutional and void, that it cannot support the conviction under the indictment, in any possible state of the proof appropriate to it.

Chapter 73 of the Revised Statutes, entitled " of the suppression of certain nuisances," is not, because it prohibits manufacturers and others from selling or keeping for sale within the state, liquors, which may have been manufactured or bought by them previous to its passage, an " *ex post facto* " law; since, so far as it punishes such selling and keeping, it is prospective; and if it lessens the value of liquors owned in the state previous to, and held at the time of its passage, such civil consequence does not make it retroact criminally, in such sense, as to bring it within the definition of an " *ex post facto* " law.

Nor is this chapter, by reason of such civil consequence, a law " impairing the obligation of contracts;" since the right to sell, or keep for sale, intoxicating liquors, and to prescribe the places and mode of their sale within the state, is within the police powers of the state, subject to which such property is holden.

Nor does this chapter, by declaring the buildings and places in which intoxicating liquors

16 *

State *v.* Paul.

are illegally sold or kept for sale to be common nuisances, authorize the destruction of such buildings by private individuals or by the public authorities; the abatement of a nuisance, caused by the illegal use of a building, consisting in the prevention of the future illegal use, and not in the destruction of the building; and no private individual being authorized to abate a nuisance, public or private, except when, and so far as, it actually obstructs him in the exercise of his rights.

The 5th and 6th sections of this chapter, relating to leases of buildings used as brothels, gaming-houses, and liquor shops, are so distinct from the other sections of the chapter, that if invalid, *their* invalidity does not affect the latter sections.

Nor is this chapter in conflict with the 5th and 6th articles in amendment of the constitution of the United States, securing to accused persons the rights of trial; these articles restricting the government of the United States, and not the government of the states.

Nor is it in conflict with the clauses of the constitution of Rhode Island securing these rights, because it makes an offence out of facts which do not at common law constitute it; these clauses not being restrictive of the power of the general assembly to define and punish offences, but conservative of certain rights of trial to persons who are tried for committing them.

The 3d section of this chapter, prescribing what shall be *primâ facie* evidence that a building is a common nuisance, applies only to buildings used for the illegal sale, or keeping for sale, of intoxicating liquors; and its provisions in this respect are so distinct from the other portions of the chapter, that, if unconstitutional, they do not affect the validity of the other portions of it.

INDICTMENT against the defendant for keeping and maintaining a grogshop, and place of resort for noisy and disorderly persons, in the city of Providence, found under sect. 2, chap. 73, of the Revised Statutes—the first section of the same chapter declaring such a place, amongst others, to be a common nuisance.

The indictment contained two counts; the first of which alleged, that " Sidney S. Paul of Providence, in said county, trader, on the 17th day of March, in the year of our Lord one thousand eight hundred and fifty-seven, and on divers other days and times, between said last-mentioned day and the day of the finding of this indictment, with force and arms, at Providence, in the aforesaid county of Providence, did keep and maintain a certain common nuisance, to wit, a grogshop and tippling-shop, and building, place, and tenement used for the illegal sale and keeping of intoxicating liquors, and for the habitual resort of intemperate, idle, dissolute, noisy, and disorderly persons, against the form of the statute in such case made and provided, and against the peace and dignity of the state."

The second count charged, that the defendant, at the same time and place, " did keep a certain grogshop and tippling-

State *v.* Paul.

shop, and building, place, and tenement, used for the illegal sale and keeping of intoxicating liquors, and for the habitual resort of intemperate, idle, dissolute, noisy, and disorderly persons, to the great damage and common nuisance of all the good citizens of this state, against the form of the statute in such case made and provided, and against the peace and dignity of the state."

The indictment was found at the May term, 1857, of the court of common pleas for the county of Providence; and the defendant, having been arraigned upon it and pleaded not guilty, was, after a continuance, tried by a jury at the following December term of said court, and found guilty. The defendant, being called to the bar of the court for sentence, interposed a constitutional objection thereto, in the following words, to wit:—

" State of Rhode Island *v.* Sidney S. Paul. And the defendant in the above entitled case, after verdict and before sentence, comes into court, and moves the court, that judgment be arrested, because he says, that the act of the legislature of the state, entitled 'an act for the suppression of certain nuisances,' being chapter 73 of the Revised Statutes of this state, is repugnant to and inconsistent with the constitution and laws of the United States, and repugnant to and inconsistent with the provisions of the constitution of the state of Rhode Island."

This motion was overruled by the court of common pleas; whereupon, the defendant entered into a recognizance, with surety, in that court, as provided in section 6, chapter 192, of the Revised Statutes, and the cause was certified to this court under the provisions of the second section of the same chapter, for the decision of the constitutional questions raised by the motion in arrest.

*Blake,* for the motion:—The act for the " suppression of certain nuisances," chapter 73 of the Revised Statutes, is in conflict with sections 9 and 10 of the 1st article of the constitution of the United States, providing, that no state shall pass any *ex post facto* law, or law impairing the obligation of contracts; and with the 5th and 6th articles of the amendments of the constitution, which provide, that no person shall be deprived of life, liberty, or property, without due process of law, and that in all

criminal prosecutions, the accused shall be informed of the nature and cause of the accusation against him, and be confronted with the witnesses against him.

By the nuisance law, all buildings or places in which intoxicating liquors are illegally kept, or illegally sold, are declared to be *common nuisances*, and are to be regarded as such. The keeper of such a building is made liable to fine and imprisonment by express provision of the law; but it follows, as a consequence of their being nuisances, that the building may be destroyed by any private individual who can do so without a breach of the peace.

What is an illegal keeping, is ascertained by reference to the act for the suppression of intemperance, (ch. 78); by which act, it is made illegal for any one but a town agent to keep any intoxicating liquor for sale within the state.

The *agent* himself cannot buy liquor manufactured in the state; and although *he* may sell it for medical, mechanical, chemical, culinary, and sacramental purposes, if manufactured in the state, the manufacturer cannot sell it, or keep it for sale for those purposes, or any other purpose, to town agents or to any others.

If one should keep in his house a cask of wine, to sell for medical or sacramental purposes, made by himself from his own grapes, or a chemist should keep a demijohn of any kind of intoxicating liquors to sell for chemical or medical purposes, he would be guilty, under the nuisance act, of keeping a nuisance.

The innkeeper, who keeps wine to sell to travellers only, is guilty; and his inn, as well as the shop of the chemist, is made a nuisance; and it is immaterial whether the liquor has been so illegally kept for a year or a single day.

An act which declares that certain facts shall constitute a certain common-law crime, when those facts are altogether unlike the facts necessary at common law to constitute the crime, is inconsistent with the provisions of the constitution securing to all accused persons the benefit of a trial according to the course of the common law. Otherwise, the legislature might declare any acts whatever, to constitute any crime whatever.

The act is inconsistent with the provisions securing the accused the benefit of due process of law, (which means a trial according to the course of the common law,) and of being confronted with the witnesses against him, because one may be convicted upon reputation, and upon proof that he has the facilities of committing the crime charged against him.

It is an *ex post facto* law, because one is made liable for keeping for sale, for any purpose, or under any regulations, liquors manufactured and kept by him for sale before the passage of the act.

It is true that the law does not, in terms, punish one for having sold or kept liquor before the passage of the law. But a law which absolutely prohibits manufacturers and others from selling, or keeping for sale within the state, liquors manufactured or bought by them for sale before the passage of the act, is in violation of the spirit and meaning of the constitution.

The nuisance law does not *regulate*, but absolutely prohibits the manufacturer from selling at all within this state.

A legislature may make a law affecting the remedy upon a contract; but if a law goes so far as greatly to impair the value of a party's rights under a contract, making them scarcely worth pursuing, it is unconstitutional, although its terms relate only to the remedy.

The same principle is applicable to *ex post facto* laws.

The act impairs the obligation of contracts; for it makes void leases made before, as well as since, the passage of the act; and it puts it in the power of any tenant to avoid a lease for ever so long a term, without the consent or fault of the lessor.

*Kimball*, attorney-general, was stopped by the court.

AMES, C. J. As a motion in arrest of judgment raises only those objections which are apparent upon the record, the question upon the record in this cause certified to us, is, whether chapter 73 of the Revised Statutes, entitled " of the suppression of certain nuisances," is so far unconstitutional and invalid, as to be incapable of sustaining the conviction of the defendant under this indictment, in any possible state of the proof appropriate to it. It is contended, that the statute in question is invalid to this extent, upon the grounds—*First*, that its provisions

are in conflict with the clauses both of the constitution of this state, and of the constitution of the United States, which forbid the general assembly to pass " an *ex post facto* law," or " law impairing the obligation of contracts;" and, *second*, that they are also in conflict with section 10, article 1, of the constitution of this state, and with the 5th and 6th articles in amendment of the constitution of the United States, securing to the accused, in a criminal prosecution, what are commonly known as " the rights of trial."

The statute in question is supposed, by the points of argument submitted to us, to be an *ex post facto* law, because, although it does not, in terms, punish one for having sold or kept liquor for sale before the passage of the act, yet it absolutely prohibits manufacturers and others from selling or keeping for sale within the state, liquors manufactured or bought by them previous to the passage of the act. It is obvious that this objection proceeds either upon a misconstruction of the statute in question, or, upon a misunderstanding of the constitutional meaning of " *an ex post facto law.*" The statute, it is admitted, does not in words punish that as an offence which was not such before its passage. It is not only therefore, by necessary intendment of law, but is also, by its express terms, prospective ; the future, " shall," being used in each section relating to the trial, punishment, or punitive consequences of the forbidden act. That it does, in effect, prohibit manufacturers and others who have manufactured or bought liquor before the passage of the act from selling it or keeping it for sale within the state afterwards, and thus affects, injuriously to them, the value of such property on their hands, does not make it an *ex post facto* law in the constitutional sense. To meet the well-settled definition of such a law, a statute must not only retroact, but must retroact, by way of *criminal* punishment, upon that which was not a crime before its passage. *Calder* v. *Bull*, 3 Dall. 386 ; *Carpenter* v. *Pennsylvania*, 17 How. 456. As the argument does not suppose that the law in question *retroacts* even, except by the civil consequence of lessening the value of certain property owned in the state at the time of its passage, it is evident that this objection has no foundation.

But it is next said, that this very civil consequence of the law impairs the obligation of the contracts under which this property is held by its owners, and thus brings the law into conflict with the clauses of the constitution of this state, and of the constitution of the United States, which forbid the passage by the general assembly of a law having such an effect.  The argument here proceeds upon the false assumption, that rights of property are absolute and unqualified, and not restricted, as they necessarily must be, by the greater right of the community, to have them so exercised within it as to be compatible with its well-being.  Within positive constitutional prohibitions, this conflict of rights must necessarily be adjusted by the lawmaking power, upon whom the care of the individual and of the community constitutionally devolves.  In the most flagrant cases of such conflict, if indeed it be such, it is adjusted by the common law, which exists by the sufferance of this power; so that no one dreams that he can use his pick for burglary, or his sword for murder, merely because they are his.  Nor can any one reasonably suppose that the whole lawmaking power is exhausted by allowing the common-law adjustment of these rights to continue; but on the contrary, this power exists in great part for the very purpose of changing the adjustment from time to time, as the relative circumstances of the community and individuals may require. Our regulations of internal police and of trade, adapted by positive law to our condition, and changed by it according to our changing circumstances, are designed in great part to control the use of property to such modes as are consistent with the health and morals of the community, and the sale of it, in such form, and with such guards, as are necessary to protect the community from fraud, and by giving credit to its productions, to insure a safe and prosperous commerce in them abroad.  What these regulations shall be, always supposing that they do not directly conflict with positive constitutional prohibitions, both the constitution of this state and the constitution of the United States properly leave to the lawmaking power to decide.  Now, it is within this class of regulations that the law in question falls. Coupled, as it must be, in order to understand its purpose and operation, with chapter 78 of the Revised Statutes, entitled " of

the suppression of intemperance," and relating in part to the same subject, the general assembly, after providing, by the latter chapter, for the sale of strong and malt liquors within the state, through agencies to be established in each town, for such purposes only as they deemed consistent with the health and morals of the people of the state, embracing sacramental, medicinal, mechanical, chemical, and culinary purposes, have, by this law, declared in substance, that all shops, buildings, places, and tenements used for the illegal sale or keeping for sale of intoxicating liquors, or where intemperate, idle, dissolute, noisy, or disorderly persons are in the habit of resorting, as well as buildings or places used as houses of ill-fame, or resorted to for prostitution, lewdness, or for illegal gaming, shall be regarded as common nuisances. Is it within the constitutional competence of the general assembly, as a matter of police, to declare buildings and places so used or so resorted to, to be common nuisances? or is it forbidden to the assembly so to do by the constitutional restriction in question, because such declaration may lessen the value of liquor on hand before the passage of the law?

That such places do, in general, tend to corrupt the morals and destroy the health of those attracted to them by their appetites, or even resorting to them to procure liquor for purposes to answer which it is procurable at the agencies, is, as a matter of fact, perfectly notorious. The vile and poisonous compounds, so generally sold at such places to the ignorant or degraded in taste, destructive alike to the body and the soul, have called aloud for regulation of some sort, in this dangerous trade. The temptation which they place before our manufacturing population amassed in villages, when released from their hours of toil, and their tendency to disorganize the labor upon which the prosperity of the state depends, is known to all. The best mode of dealing with these places, for the purpose of preventing such evils and the poverty and crime which follow so hard in the footsteps of the intemperance caused and promoted by them, is indeed a problem difficult to solve, and concerning which the wisest and the best may well entertain widely different opinions. With this question, sitting here, we have nothing to

do, for the very reason, that it is intrusted by the constitution to the lawmaking power alone to answer it, by legislation practically adapted to that end. That this power may constitutionally solve so difficult a problem in the mode devised by the law we are considering, and without impairing the obligation of the contracts under which such property in liquor, or in the buildings and places in which it is illegally sold or kept for sale, is held, we do not even doubt. Having provided proper places, in each town of the state, in which pure, undrugged, and unadulterated liquors may be supplied to the people, by sale, for all necessary purposes, it was, in our judgment, considering the nature of this article of sale and the numerous evils, physical, moral, and economical, which spring from an unlicensed traffic in it, quite within the constitutional competence of the general assembly to declare, as they have done by this law, buildings, shops, and places used for the *illegal* sale and keeping for sale of it, to be common nuisances. In other words, taking the mass of such places, this declaration of the law so fairly conforms to the fact, that no court, under such circumstances, has a right to say, if indeed it would have a right to say under any, that this law, under pretence of shielding the health and morals of the citizen, is in truth and substance an attack upon his property and the contracts under which it is held. Its theory is, at least, so far supported by facts, as to be constitutionally justified as a law far within the legislative competence to enact, notwithstanding the restrictions it necessarily imposes upon the right of the owners of property to sell, or use it, in the manner declared to be noxious and illegal. The right of the legislature to declare the sale, or use of property, in a certain mode, to be a nuisance, for the reasons which we have before considered, necessarily deprives the owner of the right so to sell or use it. Indeed, in such case, the right so to sell or use it ceases, in legal idea, to be a right of property; since no man can have a property in a nuisance. In the *License Cases*, 5 How. 574, the power of a state to regulate its internal traffic, and in relation too to this very subject, was conceded by the supreme court of the United States, in the fullest terms, as a sovereign power, unaffected by the commercial powers vested by the federal constitution in

congress. It is of the essential nature of such a power, to draw to it, as an incident, the power to define and punish offences against its regulations, whether they relate to the mode or purposes of sale, or to the use of other property necessary to the illegal traffic.

By this statute, the general assembly have seen fit to declare the buildings, places, and tenements *used* for the illegal sale or keeping of intoxicating liquors " to be *common nuisances,*" and " to be regarded as such; " as they have also, in the same section of the statute, declared buildings, places, and tenements to be common nuisances, when " resorted to for prostitution, lewdness, or for illegal gaming." The argument submitted to us on the part of the prisoner supposes, that, as a necessary consequence of such a declaration, such buildings, places, or tenements may, in abatement of the nuisance, be destroyed, by any private individual who can do so without committing a breach of the peace. If such were the consequence of the declaration, it might be very unwise legislation, but would hardly bring the law within the prohibition of the clause of the constitution which we are considering. But the statute is liable to no such reproach. By its terms, it authorizes no such proceeding by the public authorities, and still less by any private person. Public nuisances may undoubtedly be abated at common law by judgment of court upon indictment for the same, and, as well as private nuisances, by those who are specially injured or obstructed by them. But when, as here, the nuisance consists not in the existence of the thing itself, but merely in the temporary use of it, the only mode of abatement known to the common law is the prevention of the illegal use, not the destruction of the thing itself. As said by Lord Raymond in *Rex* v. *Papineau,* 2 Stra. 688, " If a dye-house or any stinking trade were indicted, you shall not pull down the house where the trade was carried on." Precisely what is necessary to abate the nuisance, and without excess, is all that the law allows to be done by its own officers, in execution of a judgment of court; and, *a multo fortiori,* by a private individual; and by him, when, and only so far as, the due exercise of his rights requires such a taking, as it were, of the law into his own

hands.  *Cooper* v. *Marshall*, 1 Burr. 259, 267.  And although the town councils of the several towns are, by the 6th section of the act in question, expressly empowered " to pass such ordinances, not inconsistent with this chapter, as they may deem most effectual for the prevention, suppression, or abatement of any such nuisance as is described in the 1st section of this chapter," yet reason as well as authority teaches us, that an ordinance authorizing the pulling down of a building because used as a brothel, gaming-house, or grogshop, would, as wholly unnecessary for the proper abatement of such a nuisance, be so clear an excess of the power above conferred, that the act of destruction would subject all those engaged in it, even officially, in execution of the ordinance, to compensatory damages, at the suit of the owner of the building thus needlessly destroyed.  *Welch* v. *Stowell*, 2 Doug. (Mich.) R. 332.

Again, it is said, that this act impairs the obligation of contracts, because " it avoids leases made before, as well as since the passage of the act, and puts it in the power of any tenant to avoid a lease for ever so long a term, without the consent or fault of the owner."

This objection is evidently founded upon the 4th and 5th sections of the act in question, which enable a landlord to terminate the lease of a building or tenement used by the tenant or occupant as a brothel, or for illegal gaming, or for the illegal sale or keeping for sale of intoxicating liquors, and which subjects him to fine or imprisonment if he knowingly lets or permits his building or tenement to be used for such purposes, or does not, after five days' notice of such use from a magistrate or officer, take reasonable measures to eject any tenant or occupant who shall thus use his building or tenement.  It will be quite time enough to consider the construction and constitutional validity of these sections of the act, when a case shall come before us involving them.  It is sufficient now to say, that they are quite distinct from the sections of the act necessary to sustain this indictment, and cannot, however invalid, affect *their* validity; and that nothing on this record shows, that the defendant's conviction, upon this indictment, has been at all affected by them.

The *second* ground upon which the act in question is claimed to be unconstitutional and void, is, that it is in conflict with the clauses of the constitution of this state, and of the 5th and 6th articles in amendment of the constitution of the United States, securing to the accused, when criminally prosecuted, the well-known constitutional rights of trial.

So far as this objection is claimed by virtue of the articles in amendment of the constitution of the United States, it is certainly without foundation. From the history of these amendments, as well as from the necessary import of most of them, they have no reference to the state governments, but are restricted in their operation to the government of the United States. The states had already provided, or could provide, by their local constitutions, for the preservation of the rights of trial against the action of their local authorities; and the articles in question originated in the well-known jealousy of the power of the general government which so nearly prevented the adoption of the federal constitution. The lucid opinion of the late Chief Justice Marshall, in giving the judgment of the supreme court of the United States in the case of *Barron* v. *The Mayor and City Council of Baltimore*, 7 Pet. 247, is an authority from the highest source upon this point, and fully sustains the above position in regard to it.

Our own constitution, however, as fully secures to persons accused of crime these rights, against the action of our state government, as the articles in amendment of the constitution of the United States secures them to the like persons, against the action of the government of the United States. Is the law in question, then, incapable of supporting the conviction upon this indictment, because in conflict with the rights of trial of the defendant upon it, secured by our state constitution? He is certainly entitled by it to be presumed to be innocent until proved to be guilty, to be confronted with the witnesses against him ; and, by its express provision, cannot " be deprived of life, liberty, or property, unless by judgment of his peers or the law of the land." Art. 1, §§ 10 and 14 of Const. of Rhode Island.

It is said that he is deprived by the act of the rights of trial

thus secured, because, " it declares that certain facts shall constitute a certain common-law crime, when these facts are altogether unlike the facts necessary to constitute the crime." We have already considered, in another aspect, the power of the general assembly to create and define, as they have done, the offence made punishable by this act; but what has this to do with the constitutional rights of trial, " securing to all accused persons the benefit of a trial according to the course of the common law ? " It is obvious, that the objection confounds the power of the assembly to create and define an offence, with the rights of the accused to trial by jury and due process of law, which exhausts the meaning of " a trial according to the course of the common law," before he can be convicted of it. The record before us shows that the accused *was* tried and convicted of the offence charged against him " according to the course of the common law, in a court of competent jurisdiction, by a petit jury duly impanelled, upon an indictment, clearly setting forth his offence, found by a grand jury, and upon which he was arraigned, and to which he personally pleaded."

The remaining objection under this head, is, that " the act is inconsistent with the provisions of the constitution securing to the accused the benefit of due process of law, and of being confronted with the witnesses against him, because one *may be* convicted upon reputation, and upon proof that he has the facilities for committing the crime charged against him."

It is a sufficient answer to this objection, that the record be-. fore us does not show that the defendant was not convicted, upon the fullest and most direct evidence, required by the common law to the conviction of one accused of crime. The third section of the act provides, " that it shall not be necessary to prove an actual sale of intoxicating liquors in any building, place, or tenement, in order to establish the character of such premises as a common nuisance; but the notorious character of any such premises, or the notorious bad and intemperate character of persons visiting the same, or the keeping of the implements or appurtenances usually appertaining to grogshops, tippling shops, or places where intoxicating liquors are sold," shall be *primâ facie* evidence, that such premises are nuisances, with-

17*

in the meaning of the first section of the act. This section is quite separable from the sections defining the offence of which the defendant was convicted, and fixing the punishment of it, and, if invalid, cannot affect the validity of those sections.

Besides, it is quite evident from the context, that the standard of *primâ facie* proof set up by that section applies only to one of the offences charged in this indictment; to wit, the offence of keeping and maintaining a grogshop, " or building, place, or tenement used for the illegal sale and keeping of intoxicating liquors." Now, the indictment also charges, that the defendant kept and maintained a building, place, and tenement " for the habitual resort of intemperate, idle, dissolute, noisy, and disorderly persons," equally declared by the first section to be a common nuisance, and to be regarded as such. As the questions before us are only raised upon a motion in arrest of judgment, and the proof upon which the defendant was convicted does not of course appear, for aught that we know, the defendant was convicted of an offence to which this objection cannot apply; since no such proof as that complained of was applicable to one of the offences charged against him.

It will be time enough to consider this last objection when a case of conviction under this act shall be brought before us, resting, in whole or part, upon reputation.

The objections raised by this record to the constitutionality of chapter 73 of the Revised Statutes, are therefore overruled; and this cause must be, forthwith, sent back to the court of common pleas for the county of Providence, now in session, with this decision, to be proceeded with pursuant thereto.