JANUARY TERM, 1863. 71

Tallman vs. The City of Janesville and another.

TALLMAN VS. THE CITY OF JANESVILLE and another.
MATTESON and another VS. THE CITY OF JANESVILLE and another.

Chapter 48, Private Laws of 1862, which provides for a re-assessment of the taxes in the city of Janesville for the years 1854, 1855, 1856 and 1857, is a constitutional and valid enactment.

The expediency of passing such laws is to be determined by the legislature; and courts can interfere only when the enactment falls within the prohibition of the constitution.

APPEALS from the Circuit Court for *Rock* County.

Actions to restrain the defendants from selling certain real estate in the city of Janesville for taxes. The ground upon which the relief was sought is stated by the court. These appeals are taken from orders of the circuit court refusing to dissolve injunctional orders previously granted, and also from orders overruling demurrers to the complaint.

*Sloan, Patten & Bailey*, for appellant :

1. The taxing power of the legislature of this state is absolute and unlimited by the constitution, except that the rule of taxation is required to be uniform. Chap. 48, Laws of 1862, is a just and necessary exercise of this power on the part of the legislature. Sedgwick on Con. Law, 501, 554 ; *The People vs. The Mayor of Brooklyn*, 4 Coms., 419 ; *Herrick vs. Randolph*, 13 Vt., 529 ; *Town of Guilford vs. Supervisors of Chenango Co.*, 3 Kern., 147 ; *Kirby vs. Shaw*, 19 Penn. St., 258 ; *McCulloch vs. State of Maryland*, 4 Wheat., 432 ; *Knowlton vs. Supervisors of Rock County*, 9 Wis., 418. 2. The remedy against unwise or unjust modes of taxation is to be sought from the legislative department of government and not from the judiciary. Sedgwick on Con. Law, 554 ; 4 Conn., 419 ; 19 Penn. St., 258 ; *Providence Bank vs. Billings*, 4 Peters, 514 ; *Osborn vs. Bank of the United States*, 9 Wheat., 738 ; 1 Kern., 143 ; 9 Wis., 418. 3. The taxes, the collection of which is sought to be restrained in this action, became a lien upon the land, and the act of 1862 establishes a proper proceeding to enforce such lien ; and it

makes no difference with the right to enforce it that the lands have passed into the hands of a *bona fide* purchaser. R. S. 1858, page 163, sec. 115 ; *Hayden vs. Foster*, 13 Pick., 492 ; Blackwell, 195, and cases cited.

*J. A. Sleeper*, for respondent :

I submit that ch. 48, Pr. Laws of 1862, is unconstitutional for the following reasons :     1. It provides for levying a tax upon lands for the years 1854 to 1857, which have been purchased for a valuable and full price paid since, and which when purchased were not subject to any lien or charge therefor, or burthened therewith.   2. It provides for levying an additional tax on lands for those years, when the tax levied on them in those years was paid in full. 3. It imposes burdens upon the people of the city, and upon the property there, and penalties for non-payment of taxes, which are not imposed by the general laws of the state ; and as to the city, repeals all laws which in any way contravene its unjust and oppressive provisions, in this : (1.) It imposes a penalty of seven per cent. per annum because taxes were not paid when levied under void and unconstitutional acts, thus making the people pay for the consequences of the blunders and stupidity of the legislature, in the passage of un-constitutional enactments, designed to oppress those who own-ed property within the recorded plots in said city of Janesville. (2.) It imposes a penalty of twenty-five per cent. on the amount charged against any land from the first Monday of April, 1862, to the third Monday of July, 1862, in addition to the seven per cent. from the first Monday of April to the third Monday of May, 1862, already included in the tax, when by the gener-al laws only twelve per cent. is charged from the time when the tax is required to be paid up to the time of sale.   (3.) It requires lands sold for taxes to be redeemed within three months after sale, when the general laws of the state give three years.   (4.) It takes away the powers of courts to grant relief against the effect of its unjust and oppressive provisions, by

JANUARY TERM, 1863. 73

Tallman vs. The City of Janesville and another.

prohibiting the allowance of injunctional orders, to restrain sales of lands or conveyance after sales; by providing that sales shall take place, and the time of redemption expire, between the commencement of one term of court and another, so that no action could be commenced and brought to trial before the lands would be forfeited and conveyed; and by providing that no action or proceeding shall be commenced in any court of this state for the purpose of setting aside the taxes on any land situate in the city of Janesville, or to invalidate or set aside any tax certificate of sale of any lands in said city for taxes, or any tax deed conveying any lands in said city, or for the purpose of recovering the possession of land in said city held under a tax deed, unless the person commencing such action or proceeding shall first pay to the treasurer of said city the amount of *all taxes remaining unpaid thereon, whether such taxes have been regularly assessed or not;* thus depriving the inhabitants of the city of Janesville, and owners of lands within the city of Janesville, of all legal and constitutional remedies in any court within the state; while the constitution and laws secure to the people of the state at large all ordinary legal remedies for the redress of wrongs and enforcement of rights in the courts of general jurisdiction. Sec. 9, Art. I, of the constitution. (5.) It makes a deed executed for lands sold under it conclusive evidence that the tax was valid, was *regularly* assessed; that all proceedings, from the valuation by the assessor up to and including the execution of the deed, were regular and were valid; conclusive evidence of a perfect and indefeasible estate in fee simple in the purchaser, against all and every *irregularity*, no matter how great, nor what its effect at law would be upon the title; conclusive against everything but the payment of the taxes or redemption from sale. Sec. 25. (6.) It declares that no tax assessed in accordance with its provisions shall be deemed *void or voidable* in consequence of any *irregularity* attending the proceedings authorized by the act. Sec. 31. (7.) While it pretends to provide for a constitutional,

equitable and uniform apportionment of the taxes on the property in the city of Janesville for each of those years, at the same time it does not provide for re-payment or allowance to any person who, under the old tax lists, paid more than his just proportion of taxes, and actually prohibits all persons from bringing any action to recover money paid on account of taxes for any of those years, thus depriving them of the means of enforcing their rights or redressing their wrongs through the medium of the courts of justice.

*By the Court,* Cole, J. After the decision in *Knowlton vs. Supervisors of Rock County,* 9 Wis., 410, which declared void the provision of the charter of the city of Janesville permitting a discrimination, in the imposition of city taxes, between the farming lands within the corporate limits and other real estate, the legislature passed chap. 48, Pr. Laws of 1862, providing for a re-assessment of the taxes in that city for the years 1854, 1855, 1856 and 1857. Some such enactment became necessary to avoid the difficulties growing out of the previous unconstitutional taxation. Some of the citizens had paid their taxes for those years, while others had refused to pay, and there was no way to enforce the collection of the delinquent tax. Hence some law became indispensable to correct the previous defective proceedings, in order to compel each citizen to contribute his due proportion of the public burdens.

The respondents in the above cases have brought these actions to restrain the sale of real estate for taxes which have been re-assessed and levied under this law for those years. Injunctions were granted, which, upon motion, the circuit court refused to dissolve; and demurrers to the complaints were likewise overruled; and these appeals are from those orders.

We are of the opinion that the complaints state no ground for an injunction. The general reason given why the tax sale should be restrained is, that the law providing for the re-assessment of the taxes for the years 1854, 1855, 1856 and 1857, is

unconstitutional and void. It is said to be an extraordinary enactment, unparalleled in the history of the legislation of any country where any regard is paid to justice or constitutional guaranties. These severe criticisms are not sustained by an examination of the law, in our judgment. For, after a careful examination of all its provisions, we do not see that it is obnoxious to any constitutional objection. Its plain, manifest intent is, to provide a way for correcting the errors and inequalities growing out of the previous taxation under the charter. It therefore provided for a re-assessment and relevying of the taxes for those years. Ample provision is made for listing the property in the city subject to taxation, for assessing and equalizing its value, and for apportioning the amount of the state, county and city taxes for each year *pro rata* upon the value of all the property in the tax list for the year for which the same was made out. Interest on the amount from the first day of January in the year next following that for which the tax list was made, up to the third Monday of May, 1862, was also included in the tax, with a per centage to cover the expense of collecting the tax. There was a provision, also, that if any portion of the taxes upon any property mentioned in the tax lists, or any of them, had been paid, the amount so paid, together with interest thereon from the time of payment to the third Monday in May, 1862, should be applied and credited in payment of the taxes assessed upon such property. A mode of enforcing a prompt collection of the tax thus re-assessed is provided, which, although quite stringent, does not transcend the power of the legislature. These are the main provisions of the law, enacted evidently for the sole purpose of correcting the defective proceedings in levying taxes under the city charter, and for meeting the exigencies growing out of the decision which declared those taxes void. Is not the enactment of such a law a proper exercise of the taxing power? Cannot the legislature pass such laws as it may from time to time find necessary to

cure defects in existing laws for raising revenue, whenever they are discovered, and make the assessment of taxes as nearly equal as possible? This is all the legislature really attempted to do by passing this law for the purpose of curing the invalidity in the previous tax proceedings. The former discrimination under the charter, it was contended, produced a gross inequality in the imposition of taxes, and violated the rule of uniformity prescribed by the constitution; and when this view was sustained by this court, the necessity for a re-adjustment and relevying of taxes for the previous years became apparent. There does not seem to be anything very extraordinary or unusual in such legislation; indeed we should think the taxing power was defective if it could not be exercised to cure such errors. The taxes for the four previous years having been declared void, the financial embarrassments of the city must have been insuperable, unless the legislature could grant some relief. The remedy afforded was permission for a re-assessment of the taxes in order to make all property contribute equally to the support of the government. Those citizens who had paid their taxes were credited with that payment upon the re-assessment of their property, and delinquent tax payers had no just ground of complaint because they were made to contribute their proper proportion to the public burdens.

The law is, however, severely denounced because it provides for levying a tax upon lands for the years 1854, 1855, 1856 and 1857, which had been purchased by the respondents of the former delinquent tax owners for a full and valuable price paid since, and which, when purchased, were not subject to any lien or charge. To impose the taxes now for those years, it is claimed, is productive of great injustice and oppression. There is doubtless some force in this objection, and yet because the law operates harshly in some cases we cannot declare it void if it is a proper exercise of the taxing power. Almost every system of taxation operates more or less unequally, and works injustice in individual cases. The objection here taken

would lie with equal force against the provision of the revised statutes which authorizes the assessor, upon discovering that any land liable to taxation in his town was omitted in the assessment roll of either or both the two previous years, to assess the same for those years it was omitted, in order that the taxes, to the amount which should have been paid in the years of such omission, may be imposed and collected. Sec. 25, ch. 15, R. S., 1849; sec. 27, ch. 18, R. S., 1858. Under these provisions it is very apparent a tax might be levied and collected upon lands which had by purchase become the property of persons other than those who owned them when the tax should have been paid. Undoubtedly analogous provisions will be found in many other revenue laws of our sister states, which inevitably operate oppressively in individual cases. And still this power of correcting defective assessment rolls, on the part of the public authorities, is a salutary and highly beneficial feature of our systems of taxation. It is not to be abandoned because in some instances it produces individual hardships. Every tax payer is interested in having the property list as perfect as possible, and therefore power to correct omissions and inequalities in the rolls is entrusted to some of the taxing officers. Again, the respondents must be assumed to have known when they purchased these lands, that the taxes formerly assessed against them had been declared void, and they purchased with full knowledge of the power of the legislature to provide for a re-assessment of them. True they might not have known that the legislature would exercise this power, but they took this risk. And whatever laws the legislature might pass, within the limitations of the constitution, to correct the previous defective proceedings in assessing taxes, they must submit to.

Many other objections are taken to this law, but we shall not stop to notice them. The expediency of passing such laws must be left to the taxing power of the government. The courts can only interfere when the enactment falls within some

prohibition of the constitution. And it is a familiar maxim that the legislature can exercise all legislative power not withheld by the state or federal constitution. And although we may deem some of the provisions of this act, relating to the means of enforcing a collection of the tax, quite severe, still we cannot say they violate any fundamental principal of justice and equity, or infract any part of the constitution.

We therefore think the orders of the circuit court, refusing to dissolve the injunctions granted to restrain the tax sales, and overruling the demurrers to the complaints, must be reversed, and the causes remanded with directions to dismiss the suits.