E. DARWIN LITCHFIELD, as Collector, &c. *vs.* McCOMBER.

The constitutionality and force of the act of the legislature, of April 19, 1859, to provide for closing the entrance of the tunnel of the Long Island Rail Road Company, in Atlantic street, in the city of Brooklyn, as well as of the act modifying the same, passed March 23, 1860, is *res adjudicata* in this court.

The power of the legislature to provide for closing the tunnel, the restoration of the street to its proper grade, and the relinquishment by the company of the right to use steam within the city limits, for a fixed compensation, not exceeding $125,000, to be assessed upon the lands within the prescribed election district, having been affirmed in the case of *The People* v. *Lawrence,* (36 *Barb.* 177,) is no longer a debatable question in the second district. *Per* BROWN, J.

The assessment authorized by the act of April 19, 1859, being a tax imposed for a local improvement, and the power exerted by the legislature in that act, and in the act of March 23, 1860, by providing for the collection of such tax by a sale of the property of owners not benefitted by the improvement, to pay for which the tax was created, being a legitimate exercise of the taxing power, the legislature also had the power to give a remedy by action, in the name of the collector appointed under the act of 1859, against an owner of property benefitted, for the recovery of an assessment made upon his property.

If such tax is just and legal in its inception, there is no limitation upon the power of the legislature to provide for its collection; and such power is to be exercised at the discretion of the legislature.

The tax laws proceed upon the principle that a tax assessed by authority of law, for a general or local purpose, creates a duty and an obligation by

Litchfield *v.* McComber.

the tax payer to make the payment. This obligation results from the nature of the relation between the government and the constituent *Per* BROWN, J.

There is no such thing, under our system, as a tax upon lands, irrespective of the owner, except in the single case of the lands of non-resident owners. The tax is assessed upon the person, in respect to the lands, as it certainly is assessed upon the person in respect to the personal property taxed. *Per* BROWN, J.

The power to tax being without limitation, it results by logical implication, that the legislature may resort to all or any of the usual remedies for the collection of an assessment. *Per* BROWN, J.

An assessment made under the act of April 19, 1859, imposing, as it does, upon the owners of the property benefitted, an obligation to make payment, it was competent for the legislature to add to the remedies given by that act an action at law for the recovery of the sum assessed to the owners respectively.

The act of April 19, 1859, created the assessment district therein mentioned, upon the theory that it was to be benefitted by the improvement; and as the collector was an officer appointed at the same time, there was no constitutional impediment in the way of conferring the power of appointing the collector upon the Long Island Rail Road Company, who were exclusively interested in, and entitled to, the tax authorized to be collected.

APPEAL by the plaintiff from a judgment of a special term, allowing a demurrer to the complaint. The action was brought in pursuance of the authority given by the act of the legislature of April 29th, 1863, (*Laws of* 1863, *p.* 526,) by the plaintiff, as collector, appointed under the act of April 19, 1859, (*Laws of* 1859, *p.* 1109, § 7,) to recover the amount of an assessment levied by virtue of the latter act, upon the property of the defendant.

*J. W. Gilbert,* for the plaintiff.

*John Sessions,* for the defendant.

*By the Court,* BROWN, J. The constitutionality and force of the act of the 19th of April, 1859, to provide for closing the entrance of the tunnel of the Long Island Rail Road Company, in Atlantic street, city of Brooklyn, &c. (*Laws of* 1859, *p.* 1109,) as well as of the act modifying the same,

passed March 23, 1860, (*Laws of* 1860, *p.* 173,) is *res adjudicata* in this court. The power of the legislature to provide for closing the tunnel, the restoration of the street to its proper grade, and the relinquishment by the company of the right to use steam within the city limits, for a fixed compensation, not exceeding the sum of $125,000, to be assessed upon the land within the prescribed assessment district, was affirmed in the case of *The People* v. *Lawrence*, (36 *Barb.* 177,) and is no longer a debatable question in this district. The plaintiff is the collector duly appointed, pursuant to the provisions of the last mentioned act, to collect so much of the money assessed upon the property charged as has not been voluntarily paid. And this action is brought by authority of another act, passed April 29th, 1863, (*Laws of* 1863, *p.* 526,) to which I shall refer more particularly hereafter, against the defendant, Edward McComber, who, it is alleged, was at the time of laying the assessment, the owner of a piece of land within the district of assessment, and was charged in the commissioners' report of such assessment, with the sum of $185.68, payment of which had been demanded of him, and which he neglected and refused to pay. The defendant demurred to the complaint, upon which he had judgment at the special term, and the plaintiff appealed from the judgment. The demurrer is general, and put in issue the power of the legislature to charge the defendant personally with the payment of the sum assessed upon his lands, and also, as the defendant claims, the validity of the plaintiff's appointment as collector of the moneys assessed.

The three acts to which I have referred, were designed to effect the same object. They are acts *in pari materia,* and must be construed in reference to one another. Their purpose was to acquire a part of the franchises of the rail road company, and to provide compensation therefor. The company's right of property in the tunnel, and the right to use steam as a motive power in Atlantic street, had become obnoxious to the owners of property there, and detrimental to

Litchfield *v.* McComber.

its value and usefulness, and it therefore became a necessity, almost, to extinguish them. These rights were property, in the best sense of the word, and they could not be taken for the public use or benefit without due compensation. The provisions of the act, in regard to the company, provided for their extinguishment, with the company's consent—the same as if taken under the law of eminent domain—and the appropriation thereof to the public use. And the assessment upon the adjoining lands was the mode provided to furnish the means to make the compensation to the rail road company, and to defray the expenses of the proceeding, which were fixed at a sum not exceeding $5000. The district of assessment was established by the act of April, 1859, so that the condition upon which the legislature should adjust and distribute the burden of the assessment should exist. It is worth while to look into some of the adjudicated cases with a view to ascertain the nature of the power which the legislature exerted to accomplish the object in view. In the case of *The People* v. *The Mayor of Brooklyn,* (4 *Comst.* 419,) some $20,000 was proposed to be taken by an assessment similar to that under consideration, for grading and paving Flushing avenue in that city, and this court, in this district, held that the money was properly taken for the public use, within the 7th section of the 1st article of the constitution, and set aside the assessment and all the proceedings as illegal and void. The court of appeals reversed the judgment, declaring that assessments upon property for local improvements were not an exercise of the right of eminent domain, but an exercise of the right of lawful and constitutional taxation inherent in every government. Taxation, the court say, exacts money or services from individuals, as their respective shares of a public burden ; while private property taken for public use, by right of eminent domain, is taken, not as the owner's share of a public burthen, but as so much more than his share ; and the government becomes debtor to the owner for the property so taken. In regard to the claim

that local taxation must be limited, or co-extensive with city, county or town districts, the court say : "There being no constitutional prohibition, the legislature may create a district for that special purpose ; or they may tax the class of lands or persons benefitted, to be designated by the public agents appointed for that purpose, without reference to town, county or district lines." In *Striker* v. *Kelly*, (7 *Hill*,. 9,) one of the questions was upon the legality of an assessment for opening Ninth avenue ; and the court decided that the power conferred upon the corporation of the city of New York to sell real estate to pay an assessment, did not conflict with the constitutional provision which prohibits the taking of private property for public use, without just compensation ; Mr. Justice Beardsley saying that "this was local taxation for a local purpose, and falls within the legitimate exercise of the taxing power." (*Vide also Brewster* v. *The City of Syracuse*, (19 *N. Y. Rep.* 116.) So also, in the case of *The. People* v. *Lawrence, supra*, Mr. Justice Emott, in relation to the assessment under consideration, says : "The theory of this act is that the removal of the tunnel, and the use of the locomotives from Atlantic street, would be a benefit to the adjacent property, and that the expense of restoring the street to its grade, and the loss to the rail road company in discontinuing running their trains by steam to the foot of the street, should be paid by the owners of such adjacent property. The courts have nothing to do with the correctness or incorrectness of this legislative opinion, and must assume the fact to be as the legislature assume to declare it. The statute proceeds to describe and create a district, and to provide for assessing the amount of this damage and expenditure upon the property in that district. This is clearly a legitimate exercise of the taxing power, under the doctrine of the leading cases, of *The People* v. *The Mayor of Brooklyn*, and *Brewster* v. *The City of Syracuse*."

Having ascertained that the assessment in question was a tax imposed for a local improvement, and that the power

exerted by the legislature in the several acts by which it was created and imposed was a legitimate exercise of the taxing power, it remains to consider whether the power of providing a remedy for its collection was restrained by any and by what limitations. The power of the legislature to charge it upon the lands is not disputed; nor do I understand the power to levy the tax by districts, or levy and sale of the goods and chattels of the owners assessed, is seriously put in controversy. But the objection most urged is against the power to give a remedy, by action against the owner of the property benefitted. If the legislature have the power to provide for the collection of this class of taxes, by the levy and sale of the property of the owner not benefitted by the improvement, to pay for which the tax is created — such as the goods and chattels of the owner, of which I think there cannot be any doubt — then it is difficult to say, upon any just reason, why it may not give a remedy by action against the owner of the property benefitted. This but enlarges the field of collection, extending it over the state in place of limiting it to the county where the improvement is. The principle of the tax, the benefit and the burden, are the same. The remedy for its collection is enlarged; that is all. If the tax is just and legal in its inception, where is the limitation upon the legislative power to provide for its collection? There is no such limitation, I venture to think; and the implication is clear that the power is to be exercised at the legislative discretion. Without the power to enforce collection, the imposing of the tax would be an idle ceremony. The personal liability of the owner of property upon which a tax is imposed, is not a novel doctrine, nor is it asserted in the act of 1863 for the first time. The case of *The Mayor* v. *Colgate*, (2 *Kern.* 140,) was an action to recover an unpaid assessment for widening a street in the city of New York; and the plaintiff had judgment. Judge Denio, in his opinion, says he feels no difficulty from the circumstance "that other remedies for the collection of these

assessments are given by the act of 1813, and by subsequent legislation. It was of great public importance that efficient means should be provided by which the public might realize the sums assessed. Thus the assessments had been made a lien upon the lots, and the remedy by distress and sale, and by action of debt, had been provided by a prior section, and subsequent provisions provided for a sale for a term of years. But a case might exist where none of these remedies would be exactly adapted to the case. Both the owner and the occupant might be without personal property; and purchases under an ex parte sale are proverbially unsafe." So, also, when a tax is assessed under the general law for personal property, and no goods and chattels can be found by the collector, out of which to make the tax, the 11th section of the act provides a remedy by summary application to this court, which in a proper case may enforce the payment by fine and imprisonment of the delinquent tax payer. These laws proceed upon the principle that a tax assessed by authority of law, for a general or local purpose, creates a duty and an obligation by the tax payer to make the payment. This obligation results from the nature of the relation between the government and the constituent. The obligations are mutual. The former owes security and protection, while the latter owes services and contributions of money, to the extent of his ability. The duty to serve when service is needed, and to pay when payment is required, is an elementary principle, without which civil government would not be possible. A tax, therefore, such as we are considering, has no sort of resemblance to a mortgage upon lands, when there is no existing debt and no covenant to pay, as was suggested at the special term. In the case of a mortgage there is a grant with a defeasance upon the performance of the condition, but with no obligation to pay or perform the condition, and nothing from which an undertaking to pay may be implied; while, in the case of the tax, there is an obligation to pay of the highest sanction. Nor is the obligation removed

or qualified because the tax is primarily imposed upon the lands within the prescribed district, thought to be benefitted by the improvement. It is not land the government needs; it is money. The tax is assessed in money, to be paid by the owner in money. I do not understand there is any such thing under our system, as a tax upon lands irrespective of the owner, except in the single case of the lands of non-resident owners. The tax is assessed upon the person, in respect to the lands, as it certainly is assessed upon the person in respect to the personal property taxed; much of which is invisible and intangible. The tax is made a lien upon the land superior to all other liens, but the charge upon the person of the tax payer and his obligation to make payment, still remains in force. The personal obligation of the owner to pay is to be inferred from the authority to levy the tax by distress and sale of his goods and chattels, which is found in all or nearly all the tax and assessment laws. The power of taxation "may be legitimately exercised on the objects to which it is applicable, to the utmost extent to which the government may choose to carry it. The only security against the abuse of the power is the structure of the government itself. In imposing the tax the government acts upon its constituents. This is in general a sufficient security against erroneous or oppressive taxation." The power to tax being without limitation, it results by logical implication that the legislature may resort to all or any of the usual remedies for its collection.

The act of the 19th April, 1859, directed the commissioners to deliver to the collector the assessment list with a warrant thereto attached, authorizing him to levy and collect the same. And the collector was directed to collect the sums or assessments therein mentioned in the same manner as the county tax is levied and collected. And the same measures might be taken to enforce the collection thereof as are provided by law in regard to the county tax. This means nothing less than "a levy of the same by distress and sale

of the goods and chattels of the person who ought to pay the same; or of any goods and chattels in his possession wherever the same may be found within the district of the collector," as provided in section two of the act concerning the manner in which taxes are to be collected, &c. (1 *R. S.* 397.) The act of the 23d March, 1860, directed the commissioners to assign over the assessment roll to the Long Island Rail Road Company, together with the right to collect and receive payment of sums of money assessed therein, in payment and satisfaction of the money due to it for the rights and franchises to be acquired and extinguished under the act of 1859, and upon its stipulating to fulfill the duties imposed upon it thereby. It also conferred upon the company the authority to appoint a collector to whom was to be delivered a warrant for the collection of all the unpaid assessments, which collector should possess all the power and authority for the collection of the assessment which was possessed by the collector appointed under the act of 1859. The act of April 29, 1863, added to the remedies then existing for the collection of the tax by declaring that the sums which the several persons named in the assessment list are liable to pay may be sued for and recovered by the collector of the assessment; provided, that in any action brought for this purpose, no costs except disbursements shall be recovered by such collector, unless the amount recovered exceeds $250. Portions of the assessment had been paid at the time of the passage of the last act, and on that account the right of action given is qualified and restrained so as to affect only the several persons named in said assessment who are liable to pay. Who these persons are is plain enough. The assessment is required to be made in the same manner as the county taxes are assessed; that is, by an assessment roll on which shall be entered, amongst other things, the names of the owners of the property, or persons assessed, the property taxed, and the amount of the tax. This is the evidence of liability for all the purposes of the decision of the defendant's

demurrer, certainly. The acts are not susceptible of any other interpretation, and in no other way can that of 1863, which was intended to give a remedy by personal action, have effect.

The learned judge at the special term thought that the terms and provisions of the law under which the assessment was laid operated, in effect, as the contract between the public and the owners of the land, which could not be changed so as to confer a new or additional right on the public at the will of the legislature without the consent of the party to be charged. I respectfully submit that there are none of the elements of a contract between the land owners and the public, in the transaction. Assuming, as I do, and as the court has held, that the extinguishment and acquisition of the rights of the rail road company was a just and legitimate exercise of the law of eminent domain, and beneficial to the public, then the case is the ordinary assessment for benefits for a local improvement, and does not partake of the nature or essence of a contract. The rights and property of the company are acquired by the public under the proceedings, and the expenses and compensation awarded is charged, like any other public burden, upon those thought to be benefitted. They acquired thereby no rights against the public in the nature of a contract, beyond the right to the appropriation of the property taken to the public use. Their position was that of tax payers, citizens charged with a public burden, and nothing else. But suppose, for a moment, that I am in error in this particular. What have the legislature done to impair the obligation of this contract? They have changed the remedy for the realization of the assessment, but the assessment itself remains the same. They have not enlarged or diminished it, or modified in any degree the proportions in which payments are to be made by the several owners; nor have they attempted to appropriate the proceeds of the tax to uses not contemplated by the original act. In every thing except an additional remedy given for its collection,

the assessment is now as it always was. In *Morse* v. *Goold*, (11 *N. Y. Rep.* 281,) the court of appeals had occasion to consider the effect which a change of remedies had upon the contract. And it determined that an act, which merely modifies the remedy for enforcing the contract, neither disturbs it or substantially impairs its efficiency. That it does not conflict with the provisions of the constitution of the United States forbidding any state to pass a law impairing the obligation of contracts. After reviewing the adjudicated cases, the court say : " These authorities are exemplifications of the principle that legal remedies are in the fullest sense under the rightful control of the legislatures of the several states, notwithstanding the provision in the federal constitution securing the inviolability of contracts. And that it is not a valid objection to the legislation on that subject that the substituted remedy is less beneficial to the creditors than the one which obtained at the time when the debt was contracted."

Thinking, as I do, that the assessment of the tax imposed upon the owners of the property benefitted an obligation to make payment, I conclude that it was quite competent for the legislature to add to the remedies given by the original act an action at law for the recovery of the sums assessed to the owners respectively.

We encountered, upon the appeal, an objection made to the plaintiffs' right to maintain the action, which does not seem to have been considered at the special term. Section 4 of the act of March 23, 1860, before referred to, gave to the Long Island Rail Road Company authority to appoint the collector to collect so much of the assessment as had not been voluntarily paid, and under this authority the plaintiff in the action received his appointment. The defendant now contends that this act is in violation of section 2 of article 10 of the constitution of the state, and therefore void. The defendant does not assign as a cause of demurrer that the plaintiff has not the legal capacity to sue. His demurrer is

Litchfield *v.* McComber.

general, that the complaint does not state facts sufficient to constitute a cause of action. He therefore, it seems to me, admits the plaintiff's capacity to bring the action. Without designing to enlarge upon the subject, I may say that I think the question raised has been sufficiently disposed of. The case of *The People* v. *Draper,* (15 *N. Y. Rep.* 532,) decides that section two of article ten of the constitution of 1846 leaves the legislature at liberty to provide for the election or appointment, in any manner it may deem suitable, of all officers, local or general, whose offices might thereafter be created by law, and also of all, other than county, city, town or village officers, whose offices were then in existence, but the mode of whose election or appointment was not pre-scribed by the constitution. It also decides that the legisla-ture may constitutionally establish new civil divisions of the state embracing whole or parts of different counties, cities, villages or towns for general purposes, permanent or tempo-rary, of civil government, provided the divisions recognized by the constitution are not abolished nor their capacity impaired to subserve the purposes and arrangements to which they are made instrumental by the constitution. The act of 1859, referred to, created the assessment district upon the theory that it was to be benefitted by the improvement; and as its collector was an officer created at the same time, I see no constitutional impediment in the way of conferring the appointment of the person who was to execute it upon the Long Island Rail Road Company who were exclusively inter-ested in, and entitled to, the tax which he was authorized to collect.

The judgment should be reversed, and the demurrer over-ruled; with leave to the defendant to answer upon the pay-ment of costs.

[DUTCHESS GENERAL TERM, May 9, 1864. *Brown, Scrugham, Lott* and *J. F. Barnard,* Justices.]