City vs. Railroad Company.

## No. 7554.

### The City of New Orleans vs. The New Orleans and Carrollton Railroad Company.

Act No. 9 of 1878, (Secs. 18 and 19) authorizing the assessment of taxable property omitted from rolls for previous years, is not in conflict with Article 110 of the Constitution of 1868, then in force, which prohibits *retroactive* legislation.

Such laws only as impair the obligation of contracts, or divest vested rights previously existing, or which create new rights or impose new obligations, not *in esse* before the passage of the law, partaking of the nature of *ex post facto* laws, fall under the ban of the constitutional inhibition.

The insertion of the words in the Constitution, forbidding retroactive legislation, has placed no greater restriction on the legislative power than had been put upon it by the Constitutions of 1845 and 1852.

Such constitutional restraint does not prevent the passage of remedial, healing or *curative* laws, designed to carry out a previously existing right, or to enforce an anterior obligation, otherwise barren of advantage. Particularly is such the case in matters of public concern, when the object in view is to have the burden of taxation equally shared by all upon whom it is imposed.

The Sections assailed are not retroactive, though retrospective. They refer to the past, but provide for a future remedy. Even were it otherwise, they are remedial or curative laws, not reached by the prohibition against retroactive legislation.

It is no valid objection to the levy and collection of a tax on the capital stock of a corporation omitted from an assessment roll, that it has since changed hands. Property liable to taxation cannot for such reason escape contribution.

The Act of 1882, No. 96, p. 128, which directs the assessment of stock to the shareholders is intended on its face to operate prospectively. It has no reference to assessments made prior to its adoption, is not *curative*, and can receive no application to the present case.

APPEAL from the Third District Court for the Parish of Orleans. *Monroe*, J.

*J. Ward Gurley, Jr.*, Assistant City Attorney, for Plaintiff and Appellant:

Sec. 8 of Act No. 73, of 1872; Sec. 17 of Act No. 96, Extra Session 1877, and Sec. 18 of Act No. 9, Extra Session 1878, are full and ample authority for the assessment and recovery of the tax for the City of New Orleans for 1878, on the capital stock of the defendant Company, which was omitted from the assessment rolls of 1877.

Defendant Company cannot be allowed to escape a tax paid by all other like companies, merely because its property was overlooked when the original assessment rolls were prepared.

The objects and purposes of the laws are to prevent loss to the State and City, and injustice to other taxpayers, by any "irregularity, informality or omission."

The general provisions of the revenue laws of the State apply to the Parish of Orleans, as well as to the other parishes of the State, except in so far as they may be in conflict with the provisions specially concerning the Parish of Orleans.

The assessment in question is not retroactive in its effect.

The assessment is legal and proper in terms. 32 An. 19 and 34 An. 618.

*L. E. Simonds* for Defendant and Appellee:

1. Sec. 8 of Act 73 of 1872, and Sec. 17 of Act 96 of 1877, do not apply to this case, but only

City vs. Railroad Company.

to property discovered, or the existence of which was unknown. The assessors could not be so ignorant as not to know that shares of stock of defendant were sold on the street every day. It was only the aggregate market value which they failed to ascertain, as being above that of the property "otherwise assessed."

2. Sec. 18 of Act 9 of 1878, could have no retroactive effect, even if the omission of the assessors to ascertain its market value can be considered as an omission of property, (Const. 1868, Art. 110.) The back assessment, as made, was merely of the difference in value between the aggregate value of the shares and that of the property actually assessed. It was too late to correct valuations.

3. All provisions in conflict with Sec. 18 of Act 9 of 1878, were expressly as well as impliedly repealed. There remained no other mode of correcting assessment rolls than provided in said Sec. 18.

4. The authority to make back assessments, in any case, refers to tangible property, and not to capital, which is ever changing in amount; it applies to visible property and not to fleeting values.

5. Sec. 17 of Act 96 of 1877, is in the portion of the Act relating to country parishes. It specifies "State and Parish taxes." At Sec. 82 of that Act begin the provisions for "Mode of Assessment in the Parish of Orleans." There is no authority to assess by "Resolution" to assessors.

6. A back assessment, based on the value of shares of stock, operates practically as a tax on new holders to cover the delinquency of former holders or assessors. It is not intended, by the law, to apply in cases of sales of land or movables, nor should it be construed to apply to shares of stock. The very omission to assess, in any year, increases the dividends to the true debtor, and raises the price to the next owner.

7. If, prior to 1878, the law had declared or fixed the shares in a railroad company, as objects of taxation at all, it contemplated that they should be assessed to the owner, i. e., the shareholder who could buy and sell the same. But by Sec. 3 of Act 9 of 1878, corporations other than railroads were required to pay for the shareholders. See also par. 12, Sec. 1, Act 8 of 1878.

8. In order to be a legal basis of taxation, property must be so described and pointed out so as to identify it.

The opinion of the Court was delivered by

BERMUDEZ, C. J.   The City sues to recover from the defendant Company $8,328.75, with ten per cent. interest for the taxes of 1878 assessed on its capital or capital stock according to the supplemental roll of 1877.

The defense is a denial of the legality of the assessment and of the existence of any capital in said year.

From a judgment for the defendant, the City has appealed.

It appears that the assessors having failed to place the capital of the Company with its other property on the roll of 1877, and the omission having been discovered, the City adopted, in Oct., 1878, an ordinance directing the assessment and placing of the capital on that roll, which was accordingly done.

As her authority for thus acting, the City points to several Acts, among which that of 1878, p. 234, the 18th and 19th Sections of which clearly authorize the course pursued.

In justification of the validity of such proceeding, the City relies upon several decisions of this Court, reported in 10 An. 745 ; 13 An.

268; 14 An. 853, 854; 15 An. 89; 21 An. 79; and also upon the ruling of the U. S. Supreme Court, affirming the decision in the Locke case, 4 Wall. 173.

The applicability of those authorities, which are not in themselves questioned, to the present case, is denied on the ground that they merely recognize the legality of a tax imposed according to a previous assessment. It is further urged, that the Sections invoked of the Act of 1878 are unconstitutional and void, as violative of Article 110 of the Constitution of 1868, which was in force at their adoption.

It is claimed that the instant case is differentiated from those to which reference is made by the circumstance that the assessment of the capital of the defendant was not made in 1877, but in 1878, after the law and the ordinance had been adopted.

It is difficult to conceive why a tax can be legally levied and collected on property placed on a roll of assessment prepared and approved before the tax had any existence, and why a tax legally levied generally on a species of taxable property in existence at the time, but not then listed, should not be likewise collected, where such omitted property is subsequently placed on an assessment roll made, *nunc pro tunc*, to cure the deficiency under the express sanction of special legislation.

Article 110 invoked is in the words following : " No *ex post facto*, or retroactive law, nor any law impairing the obligation of contracts shall be passed, nor vested rights be divested, unless for purposes of public utility and for adequate compensation made."

This Article, *totidem verbis*, is to be found in the Constitutions of 1852 and 1845 as Articles 104 of the former and 109 of the latter, with the only difference, that the words " *or retroactive law* " were inserted after the words " *ex post facto.*"

The injection has added to the provision no inhibition which did not previously exist, for it is well settled by reason and weighty authorities that no law is retroactive, unless it impairs the obligation of antecedent contracts, or divests pre-existing vested rights.

The insertion of those words was not and could not be intended to prove an absolute inhibition of all legislation *looking* or *acting* backwards, for it is apparent that if such were the case, the law-making power would, consequently be impotent to repeal anterior legislation, inasmuch as a repealing law is essentially retrospective, and necessarily operates upon an object previously in existence.

A survey of the authorities conclusively establishes that those laws only can be considered as *retroactive*, and therefore unconstitutional,

86

which impair the obligation of contracts or affect vested rights, or are in the nature of *ex post facto* laws.    36 Barb. N. Y. 447; 10 N. Y. 374; 26 Cal. 46; 63 Barb. N. Y. 85; 37 Md. 180; 26 Iowa, 340; 6 Conn. 197; 21 Conn. 71; 36 Penn. St. 857; 61 Penn. St. 320; 79 Penn. St. 407; 67 Penn. St. 479; 16 Mass. 290; 22 Ind. 204; 20 Miss. 347; 24 How. 287, 295; 4 Wall. 173; 17 How. 456; 3 Dallas, 386, 391; 13 Wall. 68; 10 How. 395; 11 Pet. 539; 2 Pet. 413; 8 Pet. 110; 1 How. Miss. R. 183. In addition, see Louisiana authorities already cited.

Such a construction has been placed upon them by the highest courts of States, the Constitution of which prohibited the passage of retro-active laws.    32 N. H. 305; 39 N. H. 505; 3 N. H. 481; 10 N. H. 386; 2 Ohio St. 152; 2 Gall. 105, 139; 5 Yerg. Tenn. 320; 1 Yerg. Tenn. 360; 56 N. H. 466; 22 Ohio, 152; 4 Texas, 470; 11 Ohio, N. S. 641; 6 Yerg. Tenn. 119; 20 Ohio, N. S. 369; 7 Johnson, 477; 2 Pet. 413; 8 Pet. 110; 11 Pet. 539.

Hence, writers of recognized eminence on constitutional limitations agree, that a retroactive statute is that which takes away or impairs any vested right acquired under existing laws, or creates a new obligation, or imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, or gives some different legal effect to some previous transaction to that which it had under the law when it took place.    Sedgwick, p. 160, Ed. 1874; Cooley, 461; Wade on Retroactive Laws, §§ 1, 194, 253; Also : Bouvier and Abbott, L. D., Vo. Retroactive; Story Com. Const., 266.

It will be remarked, that the prohibitive language in the Constitutions of this State for the years named, particularly that of 1868, is not *merely* : "No *ex post facto* or retroactive law    *    *    shall be passed." Those words are followed by these : " nor any law impairing the obligation of contracts shall be passed; nor vested rights be divested, unless for purposes of public utility and for adequate compensation made."

It cannot therefore be inferred, that the inhibition is peremptory or mandatory, and that no law whatever which looks to the past, or acts in the past, can be adopted without violating the limitation.

More than half a century ago the Supreme Court of Tennessee was called upon to expound the meaning of such words and emphatically said :

"We have viewed with earnest attention the bill of rights, Sec. 20, and have considered the inconveniences which any one interpretation will produce, and finally settled down in this opinion, that the word *retrospective*, as in the North Carolina and Maryland Constitutions, is followed by *explanatory words,* so here it is explained by the words

which immediately follow : ' or law impairing the obligation of contracts,' and that the whole clause and both sentences taken together mean, that no retrospective law which impairs their obligation shall be made ; the latter words relating equally to both the preceding substantives, and, therefore, that the term retrospective alone, without the explanatory words, can have no influence in this discussion."

In the course of our investigation we have found no criticism or reflection whatever on this opinion, and have seen it referred to with approbation. We think it is a correct rule of interpretation.

It is an admitted rule that Constitutions like statutes are subject to the same canons of interpretation. It is thus correct to say, that in construing any portions of the same, the whole clause or sentence should be considered together.

It is no doubt true, that some object was intended to be accomplished by the insertion in the Constitution of 1868 of the words prohibitory of retroactive legislation, which are not to be found in the Constitutions of 1845 and 1852. It is assuredly the duty of courts, when that object is known, to place such construction on the law as will carry out the purpose of the amendment. We have labored in vain, in the present case, to ascertain what the object could have been, and have not discovered it. Whatever it was, it cannot be said that by the insertion the words were given a meaning different or more extensive than they possessed previously. They were not designed to forbid all retroactive legislation, for if they did, the words which follow them would merely repeat the prohibition with restrictions, or be meaningless. Tautology or absurdity.

They are technical terms, which have often received a judicial interpretation, to which it is wise to adhere. It is significant that those words were left out from the Constitution now in force, and that Article 155 thereof reads as it did in the Constitutions of 1845 and 1852.

Hence, we say, that the words " *no retroactive law*," found in the Constitution of 1868, should be taken and construed in connection with the words which follow them. They would then mean, that no retroactive law which impairs the obligation of contracts, or which divests vested rights, unless for purposes of public utility and for adequate compensation made, shall be passed. Meaning thus, it is logically inferrable that the legislative power remains unshackled, as to the adoption of laws which do not impair the obligations of contracts, or divest vested rights.

It may be interesting to state here, that the Supreme Court of New Hampshire, in 1859, while considering and determining the meaning of the word " *retrospective*," found in the Constitution of that State,

Part 1, § 23, took occasion to notice and comment upon Article 105 of our Constitution of 1852. They there said:

" " In Louisiana, the Constitution, after prohibiting *ex post facto* laws and such as impair the obligation of contracts, adds: nor shall vested rights be divested, unless for purposes of public utility and for an adequate compensation previously made, which is merely substituting for the technical term, retrospective laws, the well established and common definition and interpretation of that word." See Rich vs. Flanders, 32 N. H. p. 384 (334-5).

The opinion in that case is elaborate and exhaustive. It refers to a large number of authorities which support the meaning and purport which we attach to the word *retroactive*, found in the Constitution of 1868, in force when the Act of 1868 under consideration was adopted.

Applying those principles to the matter before us, let us inquire whether the Sections invoked of that Act are retroactive within the meaning of that Constitution.

Do they impair the obligation of any antecedent contract; do they divest any pre-existing vested right?

There is but one possible way to answer those questions correctly, and that is in the negative, without the possibility of the shadow of a doubt.

Far from impairing the obligation of a contract, or divesting a vested right, they enforce the obligations of a tacit contract and of an indisputably vested right. Far from being retroactive, they are prospective. They are retrospective without being retroactive, and from the most unfavorable standpoint, would only be remedial or curative legislation, which has, at all times and everywhere, been considered as perfectly legitimate, particularly in order to safeguard and subserve the public interest.

Such legislation, says Kent, " may be of a retrospective nature, provided it do not impair contracts, or disturb absolute vested rights, and only go to confirm rights already existing and in furtherance of the remedy, by curing defects and adding to the means of enforcing existing obligations. Such statutes have been held valid when clearly just and reasonable, and conducive to the general welfare, etc." Vol. I, p. 493, (§ 455) and authorities in note.

Sedgwick defines remedial statutes to be those made from time to time to supply defects in the existing law, whether arising from the inevitable imperfection of human legislation, from change of circumstances, from mistake, or any other cause. P. 32.

Dwarris says, that there can be no question that the words of a remedial statute are to be construed largely and beneficially, so as to suppress

the mischief and advance the remedy; p. 632; Sedgwick, pp. 308 *et seq.*, 312.

Wade says, that laws may operate retrospectively upon existing remedies by changing or abolishing them, or by creating new remedies, without contravening constitutional provisions, where such legislation does not substantially impair the right which the remedy is intended to enforce. §§ 198, 253.

Since the insertion of the words, " *no retroactive law*," in the Constitution of 1868 has imposed no new restriction upon the legislative power, it clearly results that, as Article 109 and Article 105 of the Constitutions of 1845 and 1852 are identical with it in form and substance, the rulings in the Wheeler and subsequent cases, from the 10th to the 15th Annual, above cited, were made under Constitutions in that respect similar to that of 1868, like it reprobating and prohibiting retroactive legislation.

Hence, as those precedents justified as constitutional a legislation which levied a tax on previous assessments, they can be invoked and applied to sanction legal provisions authorizing the assessment *nunc pro tunc* of taxable property accidentally omitted from the proper roll, with a view to subject it to the payment of the tax regularly levied on all the listed property.

It is to be noted that the able jurist who was the organ of the Court in the Wheeler case, 10 An. 745, was the counsel who represented the plaintiff in the Frellsen case, reported in 21 An. 79.

The object of that suit was to have declared unconstitutional, as violating Article 110 of the Constitution of 1868, Act No. 114 of 1868, passed after that Constitution had gone into operation, and which levied a tax on all taxable property in the State, according to the rolls of 1867. Every argument which could be made, and every authority which could be invoked, were urged to accomplish the contemplated object, as appears from the brief presented on the occasion, and which precedes the reported opinion, but the Court organized and acting under that Constitution (1868) held the law not retroactive. It tersely said: "It has no retrospective effect; it does not operate upon any contract or right or subject in *the past*, but it provides simply that a tax for the payment of existing debts shall be levied upon the cash assessed value of the immovable and movable property of the State, according to the rolls of the year 1867, the last assessment which at that time had been made."

The Court then proceeded to consider the rulings from the 10th to the 15th Annual, and affirmed them as containing a sound doctrine applicable to the case before it, citing 4 Wall. 173, and other authorities.

The Act of 1878, under the provisions of which the capital of the defendant was assessed on a roll made to supplement that of 1877, to pay the tax levied, did not create any right which the City did not possess, or any obligation which the defendant had not incurred previously. Its object was to heal an otherwise fatal omission, by providing for a remedy to carry out an anterior right, by the enforcement of a pre-existing obligation. It is what is known as *healing, curative* legislation which is sometimes a matter of necessity, and which has uniformly been recognized as just and proper, and such as courts should countenance and put into operation.

The control of remedies exercised by the enactment of laws to cure defects, or to supply omissions and legalize past acts, is one of the most essential of legislative powers. Wade, §§ 250, 198. Very many are the cases in which the validity of such laws was formally recognized, particularly when the object in view was one one of public concern.

On the subject of taxation, assessment of property and levy of taxes, it has often been judicially declared that statutes passed to remedy the omission of property from the rolls, are not obnoxious on the ground that they divest vested rights or impair the obligation of contracts.

The courts have expressly declared that the State has the same power to authorize the assessment of property for a former as for a current year. 19 Wis. 535; 17 Wis. 71; 17 How. 456. They have even gone to the length of saying that where property was not taxable for a particular year, the legislature in a subsequent year might authorize its assessment for the year in which it was not assessed. 22 Ind. 204; 33 Wis. 93; 29 Wis. 400.

It has also been held that a statute authorizing the reassessment of property for street improvements, where the original assessment had been judicially declared void, though limited by construction to cases of irregularity for non-feasance, was, when applied to cases falling within its legitimate scope, regarded as a valid act. 27 Wis. 522; 42 Barb. 288.

Says Burroughs on Taxation, p. 198 :

" In levying a tax, the legislature sometimes imposes it on the basis of a past assessment or evaluation. Such laws have been questioned, on the ground that they are retroactive in their operations, but this view has not been sustained, the courts regarding such law as authorizing the future imposition and collection of a tax regulated according to a past assessment and as being prospective in their character and not retrospective. And this is true whether the tax is imposed by ths legisla-

ture for State purposes, or by local authorities to whom the authority has been delegated.

"Property is often omitted from the roll by the assessors for one or a number of years, and most of the States have statutes authorizing the assessors, when they ascertain omissions, to place the property on the roll with the tax extended not only for the current year, but for the past years. The legislative authority to tax the property for the omitted years is not exhausted by the failure of the party or the assessor to place it on the roll, and such assessments are valid." 15 Ind. 109; 43 N. Y. 290, 294.

Says the Supreme Court of Wisconsin in an analagous case, subsequently affirmed:

"This power of correcting defective assessment rolls, on the part of the public authorities, is a salutary and highly beneficial feature of our system of taxation. It is not to be abandoned because, in some instances, it produces individual hardship. Every taxpayer is interested in having the property list as perfect as possible, and, therefore, power to correct omissions and inequalities in the rolls is entrusted to some of the taxing officers. * * The expediency of passing such laws must be left to the taxing power of the government. The courts can only interfere when the assessment falls within some prohibition of the Constitution." 17 Wis. 77, 78; 19 Wis. 543; 23 Wis. 93; 24 Mich. 322; 4 N. Y. 579, 590; 34 N. J. 236; 56 N. Y. 261; Cooley on Taxation, p. 232 (6), *Reassessments;* also, p. 225 (3) *Special Curative Acts.*

There can be no doubt that the capital or capital stock of the defendant Company was taxable, (32 An. 19; 34 An. 618; 23 An. 18) and that the legislature had the power to authorize the City to have it assessed and subjected to the tax levied, as was done. It would be gross injustice to the tax paying community to permit taxable property to escape taxation, simply because intentionally or ,inadvertently omitted from the assessment roll, when there exists a remedy preventive of the injury. The legislature could have validly passed the law it did, prior to the occurrence of the facts of this case, to provide for the amendment of property thus omitted. The law, besides, covers similar cases *in futuro.* What the legislature could have done before, it could do and has done validly afterwards. Cooley Const. Lim. 371; Wade on Retr. Laws §§ 251, 266, and authorities in notes.

The assessment was made in 1878, after the passage of the law and of the ordinance for the tax of 1878, at the same rate as the property was listed in 1877.

No costs, no penalties were inflicted, which the law did not previ-

ously impose. The very interest claimed is not to attach until after the assessment made.

The Sections invoked, 18 and 19 of Act 9 of 1878, we conclude, do not all under the constitutional ban.

The next objection is, that the Company did not own the capital or capital stock assessed, and if it did, that it has changed hands.

All the presumptions are against the denial of ownership. It was incumbent, therefore, on the defendant to have rebutted them and established clearly its special defense. There is not a particle of evidence that the property has changed hands; but even if there were, it would not relieve the Company, for it is the corporation which was taxed and not its stockholders. The property intended to be reached, whoever now owns it, is represented by the Company, and can no more escape taxation, because of a change of hands, than could real estate or other tangible property susceptible of identification and reach.

We have considered Sec. 28 of the Acts of 1882, No. 96, p. 128, to which our attention has been called. It provides, that thereafter "actual shares shall be assessed to the shareholders who appear as as such on the books," and that "all property owned by the bank, company, etc., shall be assessed directly" to the corporation.

It is evident that this law was not designed to apply to assessments made previous to its passage. It is not curative, and cannot affect the right of the City to recover from the Company in this case. It is, on its face, intended to operate prospectively.

We fail to discover any force in what other defenses may exist, if any.

There was error in the finding of the lower court for the defendant.

It is, therefore, ordered and decreed that the judgment appealed from be reversed.

It is now ordered, adjudged and decreed that the City of New Orleans recover of the defendant, the New Orleans and Carrollton Railroad Company, the sum of eight thousand three hundred and twenty eight 75-100 dollars, with ten per cent. interest per annum, from December 1st, 1878, till paid, with the lien and privilege claimed, and costs of suit in both Courts.

Manning, J., dissents.

## CONCURRING OPINION.

FENNER, J. Without expressing any positive dissent, I prefer not unnecessarily to bind myself by present concurrence in all the broad and general interpretations placed upon the Article of the Constitution relative to retroactive laws.

I find a sufficient reason for concurrence in the decree, in the univer-

sal *consensus* of authority, holding that remedial and curative statutes of the character presented in this case do not violate any general or special prohibition of retroactive legislation.

---

### DISSENTING OPINION.

MANNING, J. The plaintiff alleges that the assessors of property for taxation in 1877 omitted to list and assess in that year a certain part of the capital or capital stock of the defendant Company, and that pursuant to authority given by several Acts of the legislature, the Common Council of the City on October 31, 1878, adopted an ordinance directing the assessment of this omitted capital or capital stock for taxes of 1878, and to place it on the rolls of 1877, which was done at a valuation of five hundred and fifty-five thousand two hundred and fifty dollars, and the tax thereon being $8,328.75, the City prays judgment for that sum with ten per centum per annum interest from Dec. 1, 1878.

The defendant denies the legality of the assessment, and avers that the Company had no money capital in 1877, and nothing that is comprehended in the term "capital," either in its legal or popular meaning; and that all its property which was liable to taxation that year, *i. e.*, its real estate, track, cars, and draft animals, was assessed and the tax thereon has been paid.

There was judgment below for the defendant and the City appealed.

The assessment of 1877 was controlled by the Act of that year, which directs that it shall be completed by the first day of July, and the rolls shall be exposed until September, during which time any person may complain of over-assessment, and provides his remedy. Sess. Acts 1877, p. 136.

The 17th Section is relied on to justify the supplemental assessment of the omitted property, but that manifestly relates to property outside of New Orleans, and by its terms has reference to State and parish taxes alone. Secs. 82 *et seq.* provide the mode of assessment for the City. The 87th Sec. contains the same provisions for the completion, exposition, and correction of the rolls that are made for the country parishes by the 17th Section. There is not anywhere in this elaborate law of 105 Sections any provision for other correction or amendment of the rolls than that allowed in the manner, and at the time prescribed by the 17th and 87th Sections, and neither of those direct or authorize such amendment of the rolls as was made by the City against the defendant Company.

Another Act upon which the City relies is that of 1872, which directs if the assessment made by its authority shall be declared, or shall be-

come void and without effect, by reason of non-compliance with any formality, then the Council shall have authority to make a new assessment and collect the taxes thereon, it being the true intent and meaning of this law that the City shall not lose the right to collect annual taxes by reason of any legal informality. Sess. Acts 1872, p. 125, Sec. 8.

The intention of this law is expressed, and its meaning is emphasised by the words of the Act. Its evident purpose was to provide for the contingency of the entire assessment roll being declared null for informality, in which event a new assessment roll is authorized in express terms, so as to preserve the City's right to realize her annual revenues.

In the case at bar there is not an entire assessment void for non-compliance with form, but an omission of a particular assessment. The defect is not of form but of substance.

The absence of provision for the case of an omission to assess in the Act of 1877 attracted attention, and this defect was corrected by the legislation of the following year. Sess. Acts 1878, p. 234. The 18th Section of the law of that year supplies the omission, and Sec. 19 attempts to apply this mode of repairing defects to the assessment of 1877 by legislative instructions to the City assessors to revise and correct the roll of that year to make it conform to the law of 1878.

Under this law of 1878 the assessors listed for taxes of 1877 the property of the defendant Company not then assessed—or rather property alleged to belong to the Company—and the collection of the taxes thereon is resisted on the ground *inter alios* that the law of 1878, *quoad* this provision, is retroactive and as such is prohibited by the Constitution of 1868.

The leading case on the question is Municipality vs. Wheeler, 10 Ann. 745, wherein the defendants contended that the Act of 1850, empowering each of municipalities of New Orleans to levy taxes on capital on the assessment rolls of 1848 and 1849, and an ordinance of one of the municipalities in pursuance thereof, approved in 1850, were unconstitutional and void because retroactive in operation. The Court say : The statute is not an *ex post facto* law, as it has no relation to crimes and penalties. However repugnant to logic and sound policy they may be, retrospective laws in civil matters do not violate the Constitution unless they tend to divest vested rights or to impair the obligation of contracts, neither of which can be predicated of the Act in question. * * * But the law under consideration does not seem to be obnoxious to severe censure. It is not strictly speaking a retrospective law. It authorizes the future imposition and collection of a tax *according to a past assessment.* This was within the legislative power.

There was a dissent, but the decision was followed by New Orleans vs. Cordeville, 13 Ann. 268; New Orleans vs. Poutz, 14 Ann. 853; New Orleans vs. Locke, Idem, 854, in all of which discussion was preter-mitted, and Wheeler's case cited as conclusive.  The case of Locke was appealed to the U. S. Supreme Court, where it was said in affirming the judgment, "the Act was not subject to the imputation of being retrospective.  It did not operate upon the past, or deprive the party of any vested rights.  It simply authorized the imposition of a tax *according to a previous assessment*," repeating the language of this Court in deciding the case appealed.  N. O. vs. Locke, 4 Wall. 173.

In New Orleans vs. Southern Bank, 15 Ann. 89, the same objection to a supplemental assessment was made as in the case at bar, and the Court said the authorities cited are not applicable *because* the law, under which the assessment was made, provided *that if any property be omitted in the assessment of one or more years, the same when discovered shall be. assessed for the years during which it was omitted.*  It is inferrible that but for such provision, the supplemental assessment would have been held illegal.

It is then manifest that Wheeler's case and those that follow it held the Act then under construction not retrospective, because the tax was imposed upon an assessment already made, and the Southern Bank case justified a supplemental assessment under a law expressly authoriz-ing it, passed antecedent to making such assessment.  But the vital point is that the Constitutions in force at the date of each. of these decisions did not prohibit retroactive legislation.   The Constitutions of 1845 and 1852 read :

No *ex post facto* law, nor any law impairing the obligation of con-tracts, shall be passed ; nor vested rights be divested, unless for pur-poses of public utility, and for adequate compensation previously made.

The significant change in that Article made by the Constitution of 1868 was directed to the prevention of legislation, not included in the term *ex post facto*, and not covered by such retrospective laws as do not impair the obligation of contracts nor divest vested rights.  Its language is :

No *ex post facto*, or *retroactive law*, nor any law impairing the obliga-tion of contracts, shall be passed ; nor vested rights be divested, unless for purposes of public utility and for adequate compensation made. Art. 110.

The Act of 1878, which alone authorizes the amendment of the assessment of 1877, was passed under the domination of that inhibition.

The earlier Constitutions of the different States, following the Con-stitution of the United States, confined their prohibitions to two kinds

of laws only, viz., *ex post facto* laws, and those impairing the obligation of contracts; and the decisions of their courts and of the federal court are based upon these restricted prohibitions, the term *ex post facto* having a settled technical meaning, which includes only such laws as relate to crimes and their penalties. As an illustration, it was held in California, whose Constitution has not any prohibition of retroactive laws, " as a general rule of statutory interpretation it is undoubtedly true that a statute should be construed to operate on the future and not on the past, but with the exception of those cases which come within the purview of prohibitory clauses in State Constitutions, or in the Constitution of the United States, we know of no case in which it is not competent for a State legislature to give a statute a retroactive effect." Von Schmidt vs. Huntington, 1 Cal. 65.

Even this constructive enlargement of legislative power has been deplored, and one of the wisest of our Courts has said: " all *ex post facto* laws are arbitrary, and it is to be regretted that constitutional prohibition of them has been restricted to laws for penalties and punishments. In a moral or political aspect an invasion of the right of property is as unjust as an invasion of the right of personal security. But retroactive legislation began and has been continued, because the judiciary has thought itself too weak, because it has neither the patronage nor the prestige necessary to sustain it against the antagonism of the legislature and the bar. Yet had it taken its stand on the rampart of the Constitution at the outset, there is some reason to think it might have held its ground. Greenough vs. Greenough, 11 Penn. 495.

No doubt the inclusion in our constitutional prohibition of retroactive laws by designation had for its object the stemming of this current of legislation and judicial construction thus feelingly deplored.

Frellsen vs. Mahan, 21 Ann. 79, arose under the enlarged prohibition, and was an injunction to restrain the collection of taxes levied under an Act of September, 1868, on the assessment of 1867, the Court holding the law not retroactive and therefore not prohibited, saying: It has no retrospective effect. It does not operate upon any contract, or right, or subject in the past, but provides simply that a tax shall be levied upon the cash assessed value of the immovable property in the State according to the assessment rolls for 1867, the last assessment which *at that time had been made,* p. 103.

Here again the pivot of the decision is the existence of the assessment before the legislative imposition of the tax, but even with this feature in the case likening it in some sort to the case of Wheeler and its successors, it may be well questioned if the ruling does not betray that succumbing to legislative encroachment which the Pennsylvania

Court stigmatised as too prevalent. It is worthy of remark that the Justice who read the opinion of the Court in the Wheeler case was one of the counsel in Frellsen's case, and in his brief for the plaintiff, commenting on the innovation, made by the Constitution of 1868 upon those anterior to it, in the enumeration of prohibited laws, he said: the change was obviously made to prevent the possibility of any more such decisions as the Court was compelled to make in Wheeler's case. If this provision had existed in the Constitution of 1845, that case would certainly have been decided the other way.

However this may be, the present case is distinguished from all the others by the circumstance that the assessment was not in existence—had not been made—and the law attempted to order that one should be made *nunc pro tunc*, thus retroacting upon the subject matter of the legislation.

A local tax differs from the general or State tax in this, that the latter may be said to be levied when the tax roll is completed, while the former depends upon an annual municipal or parochial ordinance for its existence. It is the ordinance that levies the tax, and hence it was held that a person who had removed with his property out of the State, after the assessment of the State tax, but before any local tax was assessed, was not indebted for such local tax. Templeton vs. Board Lev. Com., 16 Ann. 118. In the case at bar the ordinance of the City was not adopted until after the year for which these taxes are demanded, and after the stock of the defendant Company had presumably gone in part into other hands.

I think the case is clearly with the defendant. I know of no instance of a court sustaining an assessment, made as was this, unless an express statutory provision for the case of omitted property existed, and to that effect is the quotation from Burroughs in the opinion of the Court.

All our revenue laws, except that of 1877, contain an express provision for putting on the rolls property, the assessment of which has been omitted. The Act of 1878 prevents the loss of revenue in the future from that cause, but cannot, in my judgment, cure the defect of the *casus omissus* in the law of the previous year. The Constitution of 1879 omits the words, " or retroactive law," inserted in that of 1868, and is identical in this respect with those of 1845 and 1852.

Rehearing refused.