SAMUEL H. CARPENTER, ACTING EXECUTOR, AND CHARLES WIL-
KINS SHORT AND J. CLEVES SHORT, EXECUTORS NAMED AND
RESIDUARY LEGATEES IN THE WILL OF WILLIAM SHORT,
DECEASED, PLAINTIFFS IN ERROR v. THE COMMONWEALTH
OF PENNSYLVANIA.

The State of Pennsylvania, in 1826, passed a law by which all inheritances being
within that commonwealth, which, by the intestacy or the will of any decedent,
should devolve upon any other than the father, mother, wife, children, or lineal
descendants of such person, should be subject to a tax.

In 1850, an explanatory act was passed, declaring that the words "being within this
commonwealth," should be so construed as to relate to all persons who have been
at the time of their decease or now may be, domiciled within this commonwealth,
as well as to estates.

In 1849, a citizen of Pennsylvania died, whose will was proven by a resident executor
in December, 1849. The executor represented that a portion of the estate, consist-
ing of securities, stocks, loans, and evidences of debt and property, was not
within the commonwealth.

The supreme court of Pennsylvania decided that this portion was subject to the tax,
and this court has no authority to revise that decision.

The explanatory law is not within the prohibitions of the constitution of the United
States.

It is true that in some respects the rights of donees, under a will, become vested by
the death of a testator; but until the period of distribution arrives, the law of the
decedent's domicile attaches to the property.

The explanatory act is not an *ex post facto* law, within the 10th section of the 1st
article of the constitution of the United States. This phrase was used in a re-
stricted sense, relating to criminal cases only.

THIS case was brought up from the supreme court of Penn-
sylvania by a writ of error issued under the 25th section of the
judiciary act.

The case is stated in the opinion of the court.

It was argued by *Mr. Ewing*, and *Mr. Hart*, for the plaintiffs
in error, and by *Mr. Hood*, and *Mr. Scott*, for the defendant.

The following notice of these points on behalf of the plain-
tiffs in error, upon which the decision of this court turned, is
taken from the brief of Mr. Ewing: —

2. That the act of 1850, professes to be explanatory of the
act of 1826, does not help it in the least. If a direct act, levy-
ing a tax or penalty on past cases of collateral inheritance,
would be *ex post facto* within the meaning of the constitution
of the United States, so is this; as if the act of 1826 provided
for the punishment of crimes, a declaratory law of 1850 could
not extend its provisions to acts committed prior to the declara-
tory law, no more than an original law could punish a past fact
as a crime.

3. We have here then a retroactive law, which takes the
property of an individual to the use of the State, because of a
fact which had occurred prior to the passage of the law. And

we suppose it quite immaterial whether it is seized to the use of the State, by the name of tax,-fine, penalty, or forfeiture, so that it is seized by virtue of a *lex post factum*.

This court has decided, in cases which raised the question, that the clause in the 10th section, 1st article of the constitution of the United States, which provides that no State shall pass any " *ex post facto* law," does not prohibit the States from passing laws which shall transfer the property of A to B, for reasons, *ex post facto*, that their power in this respect, between persons, is unlimited and unrestrained. But that it does prohibit the States from making past acts penal, which, when performed, were attended with no punishment or penalty ;-and it equally prohibits them from increasing any punishment or penalty by laws passed after the fact; the scope and intent of the restriction, as construed and explained by the court, being to prohibit the States from punishing the persons or seizing upon the property of individuals, by reason of acts committed or performed previous to the enactment of the law. It is to protect the individual from the direct action of the State against his person or property for any past cause, but not to limit the power of the State in adjusting or distributing property among individuals for like cause.

Thus a State may say by a law of to-day, that A shall have the lands and goods of B, because of some fact done between A and B yesterday, which did not then transfer or pledge or incumber either lands or goods ; the protection of property, as between individuals, being left to the constitution and laws of the State, except only where a contract intervenes, the validity of which they may not impair. But the State cannot by a law of to-day forfeit to itself the lands or goods of B, be ause of some fact done or suffered by B yesterday, and which did not then by law work a forfeiture or make his lands or goods the property of the State. This would be, according to the construction of the court *ex post facto*, within the prohibition of the constitution of the United States. And I suppose it to be quite immaterial whether the past fact, by reason of which the property of an individual is seized to the use of the State by a subsequent law, *lex post factum*, be called a crime or not, or whether the seizure be denominated fine, levy, or forfeiture. This is mere form — " words, words " — *hæret in cortice*. The substance is, the seizure of the lands or funds of an individual to the use of the State by a law operating on a past fact. If the property of an individual cannot be seized to the use of the State, because of a fact which an after law declares criminal, may it be so for the same fact if the law do not at all characterize the fact, or if it pronounce it meritorious ? This would be

absurd. One State legislature enacts: That every member of the immediately preceding legislature who voted against the passage of the act to establish common schools shall be deemed guilty of a misdemeanor, and shall forfeit to the State, to be applied to said common schools, one twentieth part of his lands and goods. Such a law would be *ex post facto* within the meaning of the constitution, as expounded by this court.

The legislature of another State enacts: That every member of the immediately preceding legislature who voted against the act for the establishment of common schools shall be, and he is hereby, declared to be free from all blame or censure therefor, and there shall be assessed upon the property of every such person one twentieth part of its value, as a public tax to be applied to the use of schools. If the first be unconstitutional, so is this likewise. It does not, it is true, make the fact criminal by an after law, but it attaches to it a penalty, the same in its consequence as if it had called it a crime. In substance and effect the provisions are the same, and equally within the prohibition of the constitution.

If I be correct in this, the constitution of the United States does not apply alone in cases where an act, innocent when done, is by a subsequent law declared to be a crime, and punished as such, but also, to cases where a past fact, giving no right to the State to the property of the individual, is by an after law made the occasion of burdening him with fine, forfeiture, or assessment. This case, then, comes literally within the prohibitory clause of the constitution. It is *lex post factum*, and it is the State acting upon and against individuals by reason of the past fact. I all cases heretofore decided under this clause of the constitution, and in which the retroactive law has been sustained, the State pronounced by law between individuals, and transferred property from one to the other, by reason of some past fact, but not to itself. This, it appears to me, is the great line of distinction; and if it be once passed,—if it be held that the State may take property of an individual, because of a past fact,—the constitution affords no protection against confiscation and forfeiture; all that is necessary is to give it a softer name.

Suppose a statute, having the same effect precisely, to run thus:—

If any person shall heretofore have died within this State, leaving personal property within it, and also in other States, and leaving no lineal heirs; and if the collateral heir or devisee of such decedent shall have heretofore claimed and received such part of the estate of decedent as was situated without this State, he shall be deemed guilty of a misdemeanor, and shall

forfeit therefor, and pay to the use of common schools, one half the assets of the decedent which remain within the State at the time of the passage of this act.

No one can doubt that this would be an *ex post facto* law, within the prohibition of the constitution.

Strike out of the act the word "misdemeanor," it does not vary the case except in words. You retain the forfeiture, but fail to characterize the fact. Strike out the word "forfeit," and insert "tax," in its stead, the effect is still the same; you retain the penalty, the usual consequence of crime, by another name, and attach it as a consequence to a past fact, not pronounced criminal. The very part of the supposed criminal law against which the constitution of the United States would protect the individual, namely, the penalty, remains after the two suggested amendments. The parts stricken out, had they remained without the penalty, would be nugatory, and this court could not consider them.

It seems to me very clear, that the intent and the just effect of this constitutional provision is to protect the individual in his person and property against punishment or confiscation by the State, under a law operating upon a past fact.

4. We contend, also, that this law, in its retroactive effect, impairs the obligation of a contract.

When Carpenter, the executor, took upon himself the execution of the will, he entered into a contract, implied in law, to pay over to the legatees what should remain in his hands after paying debts and such charges as the law attached to the estate and its administration. That sum was about $43,000. The act of March 11, 1850, intervenes, and requires the executor to pay $25,000 of that sum to the State, and but $18,000 to the legatees in discharge of his implied contract.

This law, therefore, greatly impairs the obligation of this contract. For, if the law be obligatory, it at once absolves the executor from the obligation of his contract to the legatees, just to the extent that it requires him to pay to the State, and it is because of a fact which occurred before the passage of the law.

Suppose the law to have been enacted in these words: —

"That every agent, executor, administrator, factor, and attorney, who has in his hands, at the time of the passage of this act, moneys heretofore received or collected for his principal, &c., shall pay one half thereof into the treasury of the State for the use of schools, and the other half to his principal, &c., which shall be in full discharge of his legal liability to such principal."

If a State can do this, the constitution of the United States does not protect contracts; if a State can take half, as a retro-

active tax, she can take the whole, and she can name any past fact she chooses as the cause of the tax. And it is quite immaterial to the creditor whether his contract is annulled absolutely, if it be so as to him, and remains valid only for the benefit of the State.

A State may seize the property of an individual directly to her own use, but this were an act of arbitrary power not likely to occur. She may take his property for any future fact or act, whether innocent or criminal, either as a forfeiture or levy, but not for a past act or fact, by a retroactive law. She may take from A his property and give it to B, but she cannot impair the validity, or at all lessen the obligation, of a contract between them.

The following points, on behalf of the defendant, relate to that branch of the case upon which the opinion of this court rested :—

1. It does not appear, by the said document or record, that the supreme court of the United States has jurisdiction of the cause.

2. It does not appear thereby that there was drawn in question, in the supreme court of Pennsylvania, any of the causes or grounds alleged in the said writ of error.

3. It does not appear thereby that the validity of the Pennsylvania act of assembly of 11th March, 1850, was called in question in the cause in the supreme court of Pennsylvania, on the ground of its repugnancy to the constitution of the United States.

4. Nor that any such question was decided by the supreme court of Pennsylvania in said cause.

It is only where there is drawn in question in the state court the validity (not merely the construction) of a state law, that the supreme court of the United States has jurisdiction to review the question by writ of error ; and even then only where the validity of the state law is questioned, on the ground that it is repugnant to the constitution, treaties, or laws of the United States. The Commonwealth Bank of Kentucky v. Griffith, 14 Pet. 64; Lawler v. Walker, 14 How. 149, 152; Crowell v. Randall, 10 Pet. 368, in which Mr. Justice Story reviews the previous cases, &c. See, also, Ohio Life Insurance v. Debolt, 16 How. 416, Taney, C. J., 428, &c.; State Bank of Ohio v. Knoop, Ib. 369, McLean, J., 384, &c.

To give jurisdiction to the supreme court of the United States, under the 25th section of the judiciary act, it must appear on the record itself to be one of the cases enumerated in that section; and nothing out of the record can be taken into

consideration.    Armstrong *v.* The Treasurer of Athens County, 16 Pet. 281, 285; 1 Curtis's Com. § 279.

Retrospective laws are forbidden to the States only when, in civil cases, they impair the obligation of contracts; or, in criminal cases, where they are *ex post facto.* Calder *v.* Bull, 3 Dall. 386.

Where a retrospective law of a State affects vested rights, the supreme court of the United States has jurisdiction only where such rights are grounded on contract.    The Charles River Bridge *v.* The Warren Bridge, 11 Pet. 420, 536, 547; 1 Curtis's Com. §§ 244, 253, note 1; The Providence Bank *v.* Billings, 4 Pet. 514, 558, 561.

Mr. Justice CAMPBELL delivered the opinion of the court. The legislature of Pennsylvania, in 1826, adopted a law by which all inheritances, "being within this commonwealth," which, by the intestacy or the will of any decedent, should devolve "upon any other than the father, mother, wife, children, or lineal descendants" of such person, should be subject to the payment of a tax, now fixed at five per cent.    Purd. Dig. 138, § 1.

The assessments under this act were confined to the property which might be within the commonwealth.    The Commonwealth *v.* Smith, 5 Barr. 142.

In March, 1850, by an explanatory act, it was declared that the words " eing within this commonwealth, shall be so construed as to relate to all persons who have been at the time of their decease, or now may be, domiciled within this commonwealth, as well as to estates; and this is declared to be the true intent and meaning of this act."

William Short, a citizen of Pennsylvania, died within the State a few months previously to the passage of this act, leaving his property to friends and collateral relations, the principal of whom, the residuary legatees, reside beyond the limits of the State.    The will was proven, by a resident executor, in December, 1849, before the register's court in Philadelphia, and a settlement was made with that court in June of the following year.    In that settlement, the executor represented that a portion of the estate, consisting of securities, stocks, loans, and evidences of debt and property, was not within the commonwealth, and offered to pay the tax for the property within, under the act of 1826, and denied the validity of the assessment under the act of 1850.    The tax was assessed upon the entire personal estate, without reference to its locality, by the court, and its judgment upon this subject was affirmed by the supreme court, to which it was removed by *certiorari.*    That

39*

court says: " More pointed words to make the act (of 1850) retrospective could not be chosen; and it will scarce be said the legislature had not power to make it so, at least while the assets remain in the hands of the executor as administrator. No clause of the constitution forbids it to extend a tax already laid, or to tax assets not taxed before ; and, in establishing its peculiar interpretation, it has only done indirectly what it was competent to do directly." The supreme court thus interprets the act of 1850 as if it read : " That assets in the hands of an executor, for distribution among the collateral relations of .or strangers to the decedent, shall be subject to a tax of five per cent."

This court has no authority to revise the act of Pennsylvania, upon any grounds of justice, policy, or consistency to its own constitution. These are concluded by the decision of the public authorities of the State. The only inquiry for this court is, does the act violate the constitution of the United States, or the treaties and laws made under it?

The validity of the act, as affecting successions to open after its enactment, is not contested; nor is the authority of the State to levy taxes upon personal property belonging to its citizens, but situated beyond its limits, denied. But the complaint is, that the application of the act of 1826, by that of 1850, to a succession already in the course of settlement, and which had been appropriated by the last will .of the decedent, involved an arbitrary change of the existing laws of inheritance to the extent of this tax, in the sequestration of that amount for the uses of the State. That the rights of the residuary legatees were vested at the death of the testator, and from that time those persons were non-residents, and the property taxed was also beyond the State ; and that the State has employed its power over the executor and the property within its borders, to accomplish a measure of wrong and injustice. That the act contains the imposition of a forfeiture or penalty, and is *ex post facto.* It is, in some sense, true, that the rights of donees under a will are vested at the death of the testator ; and that the acts of administration which follow are conservatory means, directed by the State to ascertain those rights, and to accomplish an effective translation of the dominion of the decedent to the objects of his .bounty ; and the legislation adopted with any other aim than this would justify criticism, and perhaps censure. But, until the period for distribution arrives, the law of the decedent's domicile attaches to the property, and all other jurisdictions refer to the place of the domicile, as that where the distribution should be made. The will of the testator is proven there, and his executor receives his authority to collect

the property, by the recognition of the legal tribunals of that place. The personal estate, so far as it has a determinate owner, belongs to the executor thus constituted. The rights of the donee are subordinate to the conditions, formalities, and administrative control, prescribed by the State in the interests of its public order, and are only irrevocably established upon its abdication of this control, at the period of distribution. If the State, during this period of administration and control by its tribunals and their appointees, thinks fit to impose a tax upon the property, there is no obstacle in the constitution and laws of the United States to prevent it. Ennis *v.* Smith, 14 How. 400; *In re* Ewin, 1 Cr. and Jer. 151; 1 Barb. Ch. R. 180; 6 W. H. and G. Cy. R. 217; 21 Conn. R. 577.

The act of 1850, in enlarging the operation of the act of 1826, and by extending the language of that act beyond its legal import, is retrospective in its form; but its practical agency is to subject to assessment property liable to taxation, to answer an existing exigency of the State, and to be collected in the course of future administration; and the language retrospective is of no importance, except to describe the property to be included in the assessment. And, as the supreme court has well said, "in establishing its peculiar interpretation, it (the legislature) has only done indirectly what it was competent to do directly."

But if the act of 1850 involved a change in the law of succession, and could be regarded as a civil regulation for the division of the estates of unmarried persons having no lineal heirs, and not as a fiscal imposition, this court could not pronounce it to be an *ex post facto* law, within the 10th section of the 1st article of the constitution. The debates in the federal convention upon the constitution show that the terms "*ex post facto* laws*" were understood in a restricted sense, relating to criminal cases only, and that the description of Blackstone of such laws was referred to for their meaning. 3 Mad. Pap. 1399, 1450, 1579.

This signification was adopted in this court shortly after its organization, in opinions carefully prepared, and has been repeatedly announced since that time. Calder *v.* Bull, 3 Dall. 386; Fletcher *v.* Peck, 6 Cranch, 87; 8 Pet. 88; 11 Ib. 421.

The same words are used in the constitutions of many of the States, and in the opinions of their courts, and by writers upon public law, and are uniformly understood in this restricted sense. 3 N. H. 375; 5 Mon. 133; 9 Mass. 363; 6 Binn. 271; 4 Geor. 208.

The plaintiff's argument concedes that his case is not within the scope of this clause of the constitution, unless its limits are

enlarged to embrace civil as well as criminal cases; and he insists that the court should depart from the adjudications heretofore made upon this subject. But this cannot be done. There is no error in the record, and the judgment of the supreme court is affirmed.

### Order.

This cause came on to be heard on the transcript of the record from the supreme court of Pennsylvania, and was argued by counsel. On consideration whereof it is now here ordered, adjudged, and decreed by this court, that the decree of the said supreme court in this cause be and the same is hereby affirmed. with costs.