## MILLER BROTHERS CO. *v.* MARYLAND.

No. 160.   Argued January 5, 1954.—Decided April 5, 1954.

*William L. Marbury* argued the cause for appellant. With him on the brief were *James Piper, William Poole* and *James L. Latchum.*

*Francis D. Murnaghan, Jr.,* Assistant Attorney General of Maryland, argued the cause for appellee. With him on the brief were *Edward D. E. Rollins,* Attorney General, and *J. Edgar Harvey,* Deputy Attorney General.

Opinion of the Court by MR. JUSTICE JACKSON, announced by MR. JUSTICE REED.

Appellant is a Delaware merchandising corporation which only sells directly to customers at its store in Wilmington, Delaware. It does not take orders by mail or telephone. Residents of nearby Maryland come to its store and make purchases, some of which they carry away, some are delivered to them in Maryland by common carrier, and others by appellant's own truck. Maryland lays upon its residents an excise tax on "the use, storage or consumption" in the State of such articles,[1] and it requires every vendor to collect and remit the tax to the State.[2] This the appellant did not do. Finding appellant's truck in Maryland, the State seized it, and the State's highest court has held it liable for the use tax on all goods sold in the Delaware store to Maryland residents, however delivered.[3] This was against appellant's timely contention that the Maryland taxing act, so construed, conflicts with the federal commerce power and attempts to extend the power of the State beyond its borders in violation of the Due Process Clause of the Fourteenth Amendment. The parties have stipulated facts in detail, and, so far as they seem important, we set them forth in the Appendix.[4]

The grounds advanced by Maryland for holding the Delaware vendor liable come to this: (1) the vendor's advertising with Delaware papers and radio stations, though not especially directed to Maryland inhabitants,

---

[1] All footnotes to this opinion are carried in an Appendix, *post,* p. 347.

reached, and was known to reach, their notice; (2) its occasional sales circulars mailed to all former customers included customers in Maryland; (3) it delivered some purchases to common carriers consigned to Maryland addresses; (4) it delivered other purchases by its own vehicles to Maryland locations. The question is whether these factors, separately or in the aggregate, in each or all of the above types of sales, establish a state's power to impose a duty upon such an out-of-state merchant to collect and remit a purchaser's use tax.

It is a venerable if trite observation that seizure of property by the state under pretext of taxation when there is no jurisdiction or power to tax is simple confiscation and a denial of due process of law. "No principle is better settled than that the power of a State, even its power of taxation, in respect to property, is limited to such as is within its jurisdiction." *New York, L. E. & W. R. Co.* v. *Pennsylvania,* 153 U. S. 628, 646. "Where there is jurisdiction neither as to person nor property, the imposition of a tax would be *ultra vires* and void. If the legislature of a State should enact that the citizens or property of another State or country should be taxed in the same manner as the persons and property within its own limits and subject to its authority, or in any other manner whatsoever, such a law would be as much a nullity as if in conflict with the most explicit constitutional inhibition. Jurisdiction is as necessary to valid legislative as to valid judicial action." *St. Louis* v. *Ferry Co.,* 11 Wall. 423, 430.

But visible territorial boundaries do not always establish the limits of a state's taxing power or jurisdiction. In the last twenty years, revenue needs have come to exceed the demands that legislatures feel it expedient to make upon accumulated wealth or property with fixed location within the state. The states therefore have turned to taxing activities connected with the movement

of commerce, such as exchange and consumption. If there is some jurisdictional fact or event to serve as a conductor, the reach of the state's taxing power may be carried to objects of taxation beyond its borders. When it has the taxpayer within its power or jurisdiction, it may sometimes, through him, reach his extraterritorial income or transactions. On the other hand, if it has jurisdiction of his taxable property or transactions, it may sometimes, through these, reach the nonresident. Whether this is one of these cases we must inquire.

We are dealing with a relatively new and experimental form of taxation.[5] Taxation of sales or purchases and taxation of use or possession of purchases are complementary and related but serve very different. purposes. The former, a fiscal measure of considerable importance, has the effect of increasing the cost to the consumer of acquiring supplies in the taxing state. The use tax, not in itself a relatively significant revenue producer,[6] usually appears as a support to the sales tax in two respects. One is protection of the state's revenues by taking away from inhabitants the advantages of resort to untaxed out-of-state purchases. The other is protection of local merchants against out-of-state competition from those who may be enabled by lower tax burdens to offer lower prices. In this respect, the use tax has the same effect as a protective tariff becoming due not on purchase of the goods but at the moment of bringing them into the taxing states.[7] The collection of the use tax from inhabitants is a difficult administrative problem, and if out-of-state vendors can be compelled to collect it and remit it to the taxing state, it simplifies administration. But this raises questions of great importance to particular taxpayers, to the course of commercial dealing among the states and as to appropriation by other states of tax resources properly belonging to the state where the event occurs.

The practical and legal effect of the Maryland statute as it has been applied to this Delaware vendor is to make the vendor liable for a use tax due from the purchaser. In economic consequence, it is identical with making him pay a sales tax. The liability arises only because of a Delaware sale and is measured by its proceeds. But at the time of the sale, no one is liable for a Maryland use tax. That liability arises only upon importation of the merchandise to the taxing state, an event which occurs after the sale is complete and one as to which the vendor may have no control or even knowledge, at least as to merchandise carried away by the buyer. The consequence is that liability against the Delaware vendor is predicated upon use of the goods in another state and by another person. We do not understand the State to contend that it could lay a use tax upon mere possession of goods in transit by a carrier or vendor upon entering the State, nor do we see how such a tax could be consistent with the Commerce Clause.

The question here is whether this vendor, by its acts or course of dealing, has subjected itself to the taxing power of Maryland or whether it has afforded that State a jurisdiction or power to create this collector's liability. Despite the increasing frequency with which the question arises, little constructive discussion can be found in responsible commentary as to the grounds on which to rest a state's power to reach extraterritorial transactions or nonresidents with tax liabilities. Our decisions are not always clear as to the grounds on which a tax is supported, especially where more than one exists; nor are all of our pronouncements during the experimental period of this type of taxation consistent or reconcilable. A few have been specifically overruled, while others no longer fully represent the present state of the law. But the course of decisions does reflect at least consistent adherence to one time-honored concept: that due process requires some

definite link, some minimum connection, between a state
and the person, property or transaction it seeks to tax.

Thus, the Court has frequently held that domicile or
residence, more substantial than mere presence in transit
or sojourn, is an adequate basis for taxation, including
income,[8] property,[9] and death [10] taxes.  Since the Four-
teenth Amendment makes one a citizen of the state
wherein he resides, the fact of residence creates univer-
sally recognized reciprocal duties of protection by the
state and of allegiance and support by the citizen.  The
latter obviously includes a duty to pay taxes, and their
nature and measure is largely a political matter.  Of
course, the situs of property may tax it regardless of the
citizenship, domicile or residence of the owner, the most
obvious illustration being a tax on realty laid by the
state in which the realty is located.[11]  Also, the keeping
of tangible [12] or intangible [13] personalty within a state
may give it a similar taxable situs there (sometimes
called a business or commercial situs or domicile).  Cer-
tain activities or transactions carried on within a state,
such as the use [14] and sale [15] of property, may give juris-
diction to tax whomsoever engages therein, and the use
of highways may subject the use to certain types of taxa-
tion.[16]  These cases overlap with those in which incor-
poration by a state [17] or permission to do business there [18]
forms the basis for proportionate taxation of a company,
including its franchise, capital, income and property.
Recent cases in which a taxable sale does not clearly take
place within the taxing state, elements of the transaction
occurring in different states, have presented peculiar diffi-
culties,[19] as have those where the party liable for a use tax
does not use the product within the taxing state.[20]

We are unable to find in any of our cases a precedent
for sustaining the liability asserted by Maryland here.
In accordance with the principles of earlier cases, it was
recently settled that Maryland could not have reached

this Delaware vendor with a sales tax on these sales. *McLeod* v. *Dilworth Co.*, 322 U. S. 327. Can she then make the same Delaware sales a basis for imposing on the vendor liability for use taxes due from her own inhabitants? It would be a strange law that would make appellant more vulnerable to liability for another's tax than to a tax on itself.

The decisions relied upon by Maryland do not, in our view, support her. This is not the case of a merchant entering a state to maintain a branch and engaging in admittedly taxable retail business but trying to allocate some part of his total sales to nontaxable interstate commerce. Under these circumstances, the State has jurisdiction to tax the taxpayer, and all that he can question on Due Process or Commerce Clause grounds is the validity of the allocation. Cf. *Nelson* v. *Montgomery Ward & Co.*, 312 U. S. 373; *Nelson* v. *Sears, Roebuck & Co.*, 312 U. S. 359; *Norton Co.* v. *Department of Revenue*, 340 U. S. 534.

The nearest support for Maryland's position is *General Trading Co.* v. *State Tax Comm'n*, 322 U. S. 335. The writer of this opinion dissented in that case and, whether or not in so doing he made a correct application of principles of jurisdiction to the particular facts, it is clear that circumstances absent here were there present to justify the Court's approval of liability for collecting the tax. That was the case of an out-of-state merchant entering the taxing state through traveling sales agents to conduct continuous local solicitation followed by delivery of ordered goods to the customers, the only nonlocal phase of the total sale being acceptance of the order. Probably, except for credit reasons, acceptance was a mere formality, since one hardly incurs the cost of soliciting orders to reject. The Court could properly approve the State's decision to regard such a rivalry with its local merchants as equivalent to being a local merchant. But

there is a wide gulf between this type of active and aggressive operation within a taxing state and the occasional delivery of goods sold at an out-of-state store with no solicitation other than the incidental effects of general advertising. Here was no invasion or exploitation of the consumer market in Maryland. On the contrary, these sales resulted from purchasers traveling from Maryland to Delaware to exploit its less tax-burdened selling market. That these inhabitants incurred a liability for the use tax when they used, stored or consumed the goods in Maryland, no one doubts. But the burden of collecting or paying their tax cannot be shifted to a foreign merchant in the absence of some jurisdictional basis not present here.

In this view of the case, we need not consider whether the statute imposes an unjustifiable burden upon interstate commerce.

The judgment appealed from is reversed and the case remanded for further proceedings not inconsistent herewith.

*Reversed and remanded.*

[For dissenting opinion, see *post*, p. 357.]


## APPENDIX TO OPINION OF THE COURT.

[1] The statute reads: "An excise tax is hereby levied and imposed on the use, storage or consumption in this State of tangible personal property purchased from a vendor within or without this State on or after the effective date of this Act, for use, storage or consumption within this State. The tax imposed by this section shall be paid by the purchaser and shall be computed as follows: . . . ." Flack's Md. Ann. Code, 1951, Art. 81, § 369.

[2] "Every vendor engaging in business in this State and making sales of tangible personal property for use, storage or consumption in this State which are taxable under the provisions of this sub-title, at the time of making such sales, or if the use, storage or consumption is not then taxable hereunder, at the time when such use, storage or

consumption becomes taxable hereunder, shall collect the tax imposed by this sub-title from the purchaser." Flack's Md. Ann. Code, 1951, Art. 81, § 371.

"As used in this sub-title, the following terms shall mean or include:

"(k) 'Engaged in business in this State' means the selling or delivering in this State, or any activity in this State in connection with the selling or delivering in this State, of tangible personal property for use, storage or consumption within this State. This term shall include, but shall not be limited to the following acts or methods of transacting business.

"(1) The maintaining, occupying or using, permanently or temporarily, directly or indirectly, or through a subsidiary or agent, by whatever name called, of any office, place of distribution, sales or sample room or place, warehouse or storage place, or other place of business.

"(2) The having of any representative, agent, salesman, canvasser, or solicitor operating in this State for the purpose of selling, delivering, or the taking of orders for any tangible personal property." Flack's Md. Ann. Code, Art. 81, § 368.

"Every vendor required or permitted to collect the tax shall collect the tax imposed by the provision of this sub-title, notwithstanding the following:

"(a) That the purchaser's order or the contract of sale is delivered, mailed, or otherwise transmitted by the purchaser to the vendor at a point outside of this State as a result of solicitation by the vendor through the medium of a catalog or other written advertisement; or

"(b) That the purchaser's order or contract of sale made or closed by acceptance or approval outside of this State or before said tangible personal property enters this State; or

"(c) That the purchaser's order or contract of sale provides that said property shall be, or it is in fact, procured or manufactured at a point outside of this State and shipped directly to the purchaser from the point of origin; or

"(d) That said property is mailed to the purchaser in this State from a point outside this State or delivered to a carrier at a point outside this State, F.O.B., or otherwise, and directed to the vendor in this State, regardless of whether the cost of transportation is paid by the vendor or by the purchaser; or

"(e) That said property is delivered directly to the purchaser at a point outside this State, if it is intended to be brought to this State

for use, storage or consumption in this State." Flack's Md. Ann. Code, Art. 81, § 373.

"The vendor and any other officer of any corporate vendor required or permitted to collect the tax imposed by this sub-title shall be personally liable for the tax collected, and such vendor shall have the same right in respect to collecting the tax from the purchaser, or in respect to non-payment of the tax by the purchaser, as if the tax were a part of the purchase price of the property and payable at the time of the sale. Any vendor who fails to collect the tax pursuant to this sub-title and the regulations prescribed hereunder shall, in addition to all other penalties, be personally liable to the State for the amount uncollected." Flack's Md. Ann. Code, 1951, Art. 81, § 375.

[3] *Miller Brothers Co. v. Maryland*, 201 Md. 535, 95 A. 2d 286.

[4] "It is hereby stipulated and agreed by and between the attorneys for the above named parties and on their behalf that:

"1. Defendant, Miller Brothers Company, is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at Ninth and King Streets, Wilmington, Delaware. It has no resident agent in Maryland.

"2. Defendant is and for all times material to this suit has been engaged in the retail household furniture business by selling its merchandise from its only retail store located in Wilmington, Delaware.

"3. The only methods of advertising used by the Defendant are the following:

"(a) *Radio and Television.* The Defendant has engaged in no radio or television advertising of any sort, anywhere, since January 1, 1951. Prior to that date, the Defendant had limited radio advertising over the Wilmington, Delaware, stations. In the fall of 1950, for a period of about six weeks, the Defendant had a small amount of television advertising over Station WDEL–TV in connection with the broadcasting of football scores. The facilities of those stations are located in Delaware entirely. In the radio and television advertising the Defendant has never had any script or copy which made an appeal for out-of-state business or in any way was designed directly or indirectly to appeal particularly to Maryland residents. The radio slogan adopted by the Defendant was 'Furniture Fashion Makers for Delaware'.

"(b) *Newspapers.* The Defendant advertises regularly in the Wilmington Morning News and the Wilmington Journal every evening. It also advertises occasionally in the Wilmington Sunday Star. All of these newspapers are published in Wilmington and

undoubtedly have some circulation in some portions of Maryland. The volume of such circulation is unknown to either the Plaintiff or the Defendant. In its newspaper advertising the Defendant has never used advertising copy which mentions Maryland customers or is prepared for the purpose of directly or indirectly making any special appeal to the Maryland customers. No advertising has ever been done by the Defendant in any newspapers published in Maryland.

"(c) *Use of the Mails.* The.Defendant uses an automatic card mailing system and with this system distributes about four pieces a year. These mailing pieces go out to everyone who has purchased from the Defendant and whose name and address is on the Defendant's records. This means that Maryland residents do receive these mailing pieces, but no specific advertising copy has ever been sent through the mails for the specific purpose of attracting Maryland buyers. No advertising copy has been sent to Maryland buyers alone and the only advertising copy which these Maryland buyers receive is that which is sent to all customers whose names and addresses are on the records.

"4. Defendant has made and does make certain sales of tangible personal property, some of which sales being the subject matter of this action, to residents of the State of Maryland, who have used, consumed or stored or will use, consume or store the purchased personal property in the State of Maryland.

"5. The transactions between the Defendant and the said Maryland purchasers are and have been as follows:

"(a) It is the Defendant's policy never to accept telephone orders. Most of the merchandise sold by the Defendant requires personal inspection and selection, and it is for this reason that telephone orders are refused. The Defendant maintains no mail-order business and does not make use of coupons in connection with its newspaper advertising.

"(b) The purchaser appears at Defendant's retail store, located in Wilmington, Delaware. In about thirty per cent (30%) of the sales the exact item selected by the customer is tagged in the store and that same item is delivered to the customer from the store, in Wilmington, Delaware. In the remainder of the sales, an item identical to that selected by the customer is delivered from the Defendant's storeroom or warehouse in Wilmington, Delaware.

"(c) Delivery is made in one of three ways and no other:

"(1) The article is taken away by the purchaser. Within the taxable period of July 1, 1947, through December 31, 1951, tangible

personal property sold for at least $2,500 was delivered in this manner.

"(2) The article is delivered in Maryland to the purchaser in a motor vehicle owned and operated by Defendant, directly from Defendant's store in Wilmington, Delaware, to the residence of the Maryland purchaser. The cost of the delivery in such a case is borne by Defendant and no charge therefor is made to the purchaser. Within the taxable period July 1, 1947, through December 31, 1951, tangible personal property sold for at least $8,000 was delivered in this manner.

"(3) The article is delivered in Maryland to the purchaser by common carrier to which delivery is made by Defendant in Wilmington, Delaware. Such common carrier is usually an independent trucking line authorized to do business as a commercial carrier by the Interstate Commerce Commission. The cost of the delivery in such a case is borne by the Defendant and no charge therefor is made to the purchaser. Within the taxable period July 1, 1947, through December 31, 1951, tangible personal property sold for at least $1,500 was delivered in this manner.

"6. (a) Payment for some purchases is completed at the time the purchaser appears at the Defendant's retail store and prior to the delivery.

"(b) The Defendant does make sales to some Maryland residents on credit in exactly the same way as it sells to Delaware residents on credit. In the case of most of such credit sales to Maryland customers, the Defendant enters into conditional sales contracts with its Maryland customers in the same way that it enters into conditional sales contracts with its Delaware customers. In many other instances, the Defendant notes the terms of the credit transaction on the sales slip without requiring a conditional sales agreement, and this method of business is used without any distinction between Maryland and Delaware customers. This method is frequently designated as a 60 or 90-day charge account. At no time within the past eight years has the Defendant ever recorded its conditional sales contracts in Maryland.

"(c) The Defendant has never repossessed by legal process any furniture or other merchandise for any customers in Maryland or elsewhere within the last fifteen years. The Defendant has on occasion accepted back merchandise which has not been satisfactory to the customer. In the event of delinquency in payments, the Defendant uses collection letters, which are sent through the mails. During the past ten years the Defendant has never instituted legal

action through a Magistrate's or other Court in Maryland, nor has it in that period used a collection agent in Maryland. The Defendant employs no collectors. The Maryland customers make payments to the Defendant personally at the store in Wilmington, Delaware, or by check, cash or money order sent through the mails.

"(d) No C. O. D. deliveries are made.

"7. Except to the extent, if any, disclosed above, Defendant does not maintain, occupy or use, nor has it ever in the past maintained, occupied or used, permanently or temporarily, directly or indirectly, or through a subsidiary or agent, by whatever name called, any office, branch, place of distribution, sales or sample rooms or place, warehouse or storage place, or other place of business in the State of Maryland.

"8. Except to the extent, if any, disclosed above, Defendant does not have, nor has it ever had, any representative, agent, salesman, canvasser or solicitor operating in the State of Maryland for the purpose of selling or taking any orders for tangible personal property, or delivering the same.

"9. Defendant is not, nor has it ever been, qualified or registered to do business in the State of Maryland.

"10. On or about March 10, 1952, the Comptroller of the State of Maryland assessed a deficiency in Use Tax against the Defendant in the amount of $356.40, $240.00 thereof representing the use tax claimed to be due, $32.40 thereof as interest claimed to be due and $84.00 thereof as a penalty claimed to be due for the tax period from July 1, 1947, through December 31, 1951, based upon all the sales referred to in paragraph 5 above.

"11. Defendant has not applied for a permit nor been authorized by the Comptroller to collect any use tax under Section 312 of Article 81 of the Annotated Code of Maryland (1947 Supp.).

"12. Defendant has not applied for, nor paid the license fee required to obtain, nor has been issued, a license pursuant to Sections 331–333 of Article 81 of the Annotated Code of Maryland (1947 Supp.).

"13. Except as indicated above, Defendant does not engage and has not engaged in any activities in the State of Maryland."

[5] Criz, The Use Tax, 1 (Public Administration Service No. 78, 1941) ; Hellerstein, State and Local Taxation (1952), 4–12, 338; Haig and Shoup, The Sales Tax in the American States (1934), 83.

[6] Criz, *supra,* at 3–4, 36–39. For an example of the revenue features in a particular state, see McLees, The Use Tax After One Year, 4 Ark. L. Rev. 337, 339 (1950).

[7] Criz, *supra*, at 1–2; Hellerstein, *supra*, at 116, 408–409, 418; Jacoby, Retail Sales Taxation (1938), c. VI.

[8] *Maguire* v. *Trefry*, 253 U. S. 12; *Lawrence* v. *State Tax Comm'n*, 286 U. S. 276; *New York ex rel. Cohn* v. *Graves*, 300 U. S. 308; *Guaranty Trust Co.* v. *Virginia*, 305 U. S. 19.

The collection of cases in footnotes 8 through 20 is not intended as a guide to their holdings but only as an illustration of the types of jurisdictional standards sanctioned at one time or another by the Court.

[9] Most of these cases deal with intangible property and apply the maxim *mobilia sequuntur personam*. *Kirtland* v. *Hotchkiss*, 100 U. S. 491; *Darnell* v. *Indiana*, 226 U. S. 390; *Hawley* v. *City of Malden*, 232 U. S. 1; *Fidelity & Columbia Trust Co.* v. *Louisville*, 245 U. S. 54; *Citizens National Bank* v. *Durr*, 257 U. S. 99; *Klein* v. *Board of Tax Supervisors*, 282 U. S. 19, 24; *Greenough* v. *Tax Assessors of Newport*, 331 U. S. 486. See *Nevada Bank* v. *Sedgwick*, 104 U. S. 111; *Bonaparte* v. *Tax Court*, 104 U. S. 592, 595; *Sturges* v. *Carter*, 114 U. S. 511, 521; *Dewey* v. *Des Moines*, 173 U. S. 193; *Kidd* v. *Alabama*, 188 U. S. 730, 731.

[10] *Blackstone* v. *Miller*, 188 U. S. 189; *Bullen* v. *Wisconsin*, 240 U. S. 625; *Blodgett* v. *Silberman*, 277 U. S. 1; *Farmers Loan & Trust Co.* v. *Minnesota*, 280 U. S. 204; *Baldwin* v. *Missouri*, 281 U. S. 586; *Beidler* v. *South Carolina Tax Comm'n*, 282 U. S. 1; *First National Bank* v. *Maine*, 284 U. S. 312; *Curry* v. *McCanless*, 307 U. S. 357; *Graves* v. *Elliott*, 307 U. S. 383; *Graves* v. *Schmidlapp*, 315 U. S. 657; *Central Hanover Bank & Trust Co.* v. *Kelly*, 319 U. S. 94. See *Carpenter* v. *Pennsylvania*, 17 How. 456; *Wachovia Bank & Trust Co.* v. *Doughton*, 272 U. S. 567; *Burnet* v. *Brooks*, 288 U. S. 378, 400–405. Cf. *Worcester County Trust Co.* v. *Riley*, 302 U. S. 292; *Pearson* v. *McGraw*, 308 U. S. 313. See also *Keeney* v. *Comptroller of New York*, 222 U. S. 525, 537, which involved an excise tax on an *inter vivos* transfer of stocks and bonds.

[11] The Court has never had a case in which a state attempted a direct tax on land located in another state. See *Union Refrigerator Transit Co.* v. *Kentucky*, 199 U. S. 194, 204. Instead, the cases in point speak of the problem by way of dicta or deal with interests attached to the realty, such as incorporeal hereditaments. See *Witherspoon* v. *Duncan*, 4 Wall. 210; *State Tax on Foreign-Held Bonds*, 15 Wall. 300, 319; *Savings & Loan Society* v. *Multnomah County*, 169 U. S. 421; *Paddell* v. *City of New York*, 211 U. S. 446; *First National Bank* v. *Maine*, 284 U. S. 312, 326; *Senior* v. *Braden*, 295

354

U. S. 422. Cf. *Louisville & Jeffersonville Ferry Co.* v. *Kentucky,* 188 U. S. 385; *Central R. Co.* v. *Jersey City,* 209 U. S. 473.

[12] *Coe* v. *Errol,* 116 U. S. 517, 524; *Adams Express Co.* v. *Ohio State Auditor,* 165 U. S. 194, 226–227; *American Refrigerator Transit Co.* v. *Hall,* 174 U. S. 70; *Union Refrigerator Transit Co.* v. *Lynch,* 177 U. S. 149; *Carstairs* v. *Cochran,* 193 U. S. 10; *Old Dominion S. S. Co.* v. *Virginia,* 198 U. S. 299; *Hannis Distilling Co.* v. *Mayor and City Council,* 216 U. S. 285; *Johnson Oil Refining Co.* v. *Oklahoma ex rel. Mitchell,* 290 U. S. 158; *City Bank Farmers Trust Co.* v. *Schnader,* 293 U. S. 112; *Ott* v. *Mississippi Valley Barge Line Co.,* 336 U. S. 169. See *Hays* v. *Pacific Mail S. S. Co.,* 17 How. 596; *St. Louis* v. *Ferry Co.,* 11 Wall. 423; *Morgan* v. *Parham,* 16 Wall. 471; *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 196, 210–211; *Marye* v. *Baltimore & O. R. Co.,* 127 U. S. 117, 123; *Pullman's Palace Car Co.* v. *Pennsylvania,* 141 U. S. 18, 22; *Pittsburgh, C., C. & St. L. R. Co.* v. *Backus,* 154 U. S. 421, 427–428; *Henderson Bridge Co.* v. *Henderson City,* 173 U. S. 592, 609, 613, 622 (bridge); *Diamond Match Co.* v. *Ontonagon,* 188 U. S. 82; *Fargo* v. *Hart,* 193 U. S. 490; *Delaware, L. & W. R. Co.* v. *Pennsylvania,* 198 U. S. 341; *Union Refrigerator Transit Co.* v. *Kentucky,* 199 U. S. 194; *Thompson* v. *Kentucky,* 209 U. S. 340, 347; *Gromer* v. *Standard Dredging Co.,* 224 U. S. 362, 371–372; *Wells, Fargo & Co.* v. *Nevada,* 248 U. S. 165, 167; *Union Tank Line Co.* v. *Wright,* 249 U. S. 275; *Frick* v. *Pennsylvania,* 268 U. S. 473; *Treichler* v. *Wisconsin,* 338 U. S. 251; *Standard Oil Co.* v. *Peck,* 342 U. S. 382. Whether the property is sufficiently situated in the state to become part of the general mass of taxable property or whether it is merely in transit is frequently treated as an interstate commerce question rather than a jurisdictional one. *E. g., Brown* v. *Houston,* 114 U. S. 622, 632–633; *Pittsburg & Southern Coal Co.* v. *Bates,* 156 U. S. 577, 588–589; *Kelley* v. *Rhoads,* 188 U. S. 1; *General Oil Co.* v. *Crain,* 209 U. S. 211; *Champlain Realty Co.* v. *Brattleboro,* 260 U. S. 366. As to the situs of personalty within various counties of a single state, see *Columbus Southern R. Co.* v. *Wright,* 151 U. S. 470.

[13] *Tappan* v. *Merchants' National Bank,* 19 Wall. 490, 499–500; *Adams Express Co.* v. *Ohio State Auditor,* 166 U. S. 185; *New Orleans* v. *Stempel,* 175 U. S. 309; *Bristol* v. *Washington County,* 177 U. S. 133; *State Board of Assessors* v. *Comptoir National D'Escompte,* 191 U. S. 388; *Metropolitan Life Ins. Co.* v. *New Orleans,* 205 U. S. 395; *Liverpool & London & Globe Ins. Co.* v. *Board of Assessors,* 221 U. S. 346; *Orient Ins. Co.* v. *Board of Assessors,* 221 U. S. 358; *Wheeler* v. *Sohmer,* 233 U. S. 434; *Rogers* v. *Hennepin County,* 240

U. S. 184; *Iowa* v. *Slimmer*, 248 U. S. 115; *Safe Deposit & Trust Co.* v. *Virginia*, 280 U. S. 83; *Virginia* v. *Imperial Coal Sales Co.*, 293 U. S. 15; *Wheeling Steel Corp.* v. *Fox*, 298 U. S. 193; *New York ex rel. Whitney* v. *Graves*, 299 U. S. 366; *First Bank Stock Corp.* v. *Minnesota*, 301 U. S. 234. See *Railroad Co.* v. *Jackson*, 7 Wall. 262; *Adams Express Co.* v. *Kentucky*, 166 U. S. 171; *Scottish Union & National Ins. Co.* v. *Bowland*, 196 U. S. 611, 619–620; *Buck* v. *Beach*, 206 U. S. 392; *Selliger* v. *Kentucky*, 213 U. S. 200; *Brooke* v. *City of Norfolk*, 277 U. S. 27. Cf. *Board of Assessors* v. *New York Life Ins. Co.*, 216 U. S. 517, 523. In some of these cases, the property would appear to be tangible as well as intangible in nature.

[14] This is generally discussed as an interstate commerce question. *E. g.*, *Bowman* v. *Continental Oil Co.*, 256 U. S. 642; *Eastern Air Transport, Inc.* v. *South Carolina Tax Comm'n*, 285 U. S. 147; *Gregg Dyeing Co.* v. *Query*, 286 U. S. 472; *Nashville, C. & St. L. R. Co.* v. *Wallace*, 288 U. S. 249; *Edelman* v. *Boeing Air Transport, Inc.*, 289 U. S. 249; *Monamotor Oil Co.* v. *Johnson*, 292 U. S. 86; *Henneford* v. *Silas Mason Co.*, 300 U. S. 577. See also footnote 20.

[15] *New York ex rel. Hatch* v. *Reardon*, 204 U. S. 152, 158–159. See *Department of Treasury* v. *Wood Preserving Corp.*, 313 U. S. 62; *McLeod* v. *J. E. Dilworth Co.*, 322 U. S. 327. Cf. *Sonneborn Bros.* v. *Cureton*, 262 U. S. 506; *Graniteville Mfg. Co.* v. *Query*, 283 U. S. 376 (creation of promissory notes). See also footnote 19.

[16] *Kane* v. *New Jersey*, 242 U. S. 160; *Interstate Busses Corp.* v. *Blodgett*, 276 U. S. 245; *Continental Baking Co.* v. *Woodring*, 286 U. S. 352; *Hicklin* v. *Coney*, 290 U. S. 169. See *Hendrick* v. *Maryland*, 235 U. S. 610; *Clark* v. *Poor*, 274 U. S. 554. Cf. *Sprout* v. *South Bend*, 277 U. S. 163; *Interstate Transit, Inc.* v. *Lindsey*, 283 U. S. 183; *Clark* v. *Paul Gray, Inc.*, 306 U. S. 583; *Bode* v. *Barrett*, 344 U. S. 583.

[17] *Society for Savings* v. *Coite*, 6 Wall. 594, 607; *Delaware Railroad Tax*, 18 Wall. 206, 231; *Henderson Bridge Co.* v. *Kentucky*, 166 U. S. 150; *Corry* v. *Mayor and Council of Baltimore*, 196 U. S. 466; *Ayer & Lord Tie Co.* v. *Kentucky*, 202 U. S. 409; *New York ex rel. New York C. & H. R. R. Co.* v. *Miller*, 202 U. S. 584; *Southern Pacific Co.* v. *Kentucky*, 222 U. S. 63; *Kansas City, F. S. & M. R. Co.* v. *Botkin*, 240 U. S. 227, 232, 235; *Kansas City, M. & B. R. Co.* v. *Stiles*, 242 U. S. 111, 118–119; *Cream of Wheat Co.* v. *County of Grand Forks*, 253 U. S. 325; *Schwab* v. *Richardson*, 263 U. S. 88; *Matson Navigation Co.* v. *State Board of Equalization*, 297 U. S. 441; *Schuylkill Trust Co.* v. *Pennsylvania*, 302 U. S. 506, 514–516; *Newark Fire Ins. Co.* v. *State Board of Tax Appeals*, 307 U. S. 313;

*Northwest Airlines, Inc.* v. *Minnesota,* 322 U. S. 292. See *Baker* v. *Baker, Eccles & Co.,* 242 U. S. 394, 400–401; *Maxwell* v. *Bugbee,* 250 U. S. 525, 539–540; *State Tax Comm'n* v. *Aldrich,* 316 U. S. 174. In many of these cases the company was also doing business in the state of incorporation.

[18] *State Railroad Tax Cases,* 92 U. S. 575, 603; *Horn Silver Mining Co.* v. *New York,* 143 U. S. 305; *Baltic Mining Co.* v. *Massachusetts,* 231 U. S. 68; *St. Louis Southwestern R. Co.* v. *Arkansas,* 235 U. S. 350, 364; *Equitable Life Assurance Society* v. *Pennsylvania,* 238 U. S. 143; *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. 113; *Pullman Co.* v. *Richardson,* 261 U. S. 330; *Bass, Ratcliff & Gretton, Ltd.* v. *State Tax Comm'n,* 266 U. S. 271; *Great Northern R. Co.* v. *Minnesota,* 278 U. S. 503; *Great Atlantic & Pacific Tea Co.* v. *Grosjean,* 301 U. S. 412, 424–427; *Atlantic Refining Co.* v. *Virginia,* 302 U. S. 22, 29–31; *Illinois Central R. Co.* v. *Minnesota,* 309 U. S. 157; *Wisconsin* v. *J. C. Penney Co.,* 311 U. S. 435; *International Harvester Co.* v. *Wisconsin Department of Taxation,* 322 U. S. 435; *International Harvester Co.* v. *Evatt,* 329 U. S. 416, 420–421; *Interstate Oil Pipe Line Co.* v. *Stone,* 337 U. S. 662, 667–668. See *Erie R. Co.* v. *Pennsylvania,* 21 Wall. 492; *Western Union Telegraph Co.* v. *Attorney General,* 125 U. S. 530, 548; *Maine* v. *Grand Trunk R. Co.,* 142 U. S. 217, 227–228; *Central Pacific R. Co.* v. *California,* 162 U. S. 91, 126; *Western Union Telegraph Co.* v. *Missouri ex rel. Gottlieb,* 190 U. S. 412; *Western Union Telegraph Co.* v. *Kansas ex rel. Coleman,* 216 U. S. 1, 30, 38; *Pullman Co.* v. *Kansas ex rel. Coleman,* 216 U. S. 56, 61–63; *Ludwig* v. *Western Union Telegraph Co.,* 216 U. S. 146, 162–163; *Atchison, T. & S. F. R. Co.* v. *O'Connor,* 223 U. S. 280, 285; *Provident Savings Life Assurance Society* v. *Kentucky,* 239 U. S. 103; *Looney* v. *Crane Co.,* 245 U. S. 178, 187–188; *International Paper Co.* v. *Massachusetts,* 246 U. S. 135; *Wallace* v. *Hines,* 253 U. S. 66; *Southern R. Co.* v. *Watts,* 260 U. S. 519, 527; *Baker* v. *Druesedow,* 263 U. S. 137; *Air-Way Electric Appliance Corp.* v. *Day,* 266 U. S. 71, 81–82; *Alpha Portland Cement Co.* v. *Massachusetts,* 268 U. S. 203, 217–218; *Rhode Island Hospital Trust Co.* v. *Doughton,* 270 U. S. 69; *Hans Rees' Sons, Inc.* v. *North Carolina ex rel. Maxwell,* 283 U. S. 123; *Connecticut General Life Ins. Co.* v. *Johnson,* 303 U. S. 77; *Wisconsin Gas & Electric Co.* v. *United States,* 322 U. S. 526, 530–531. Cf. *Armour & Co.* v. *Virginia,* 246 U. S. 1; *St. Louis & E. St. L. E. R. Co.* v. *Missouri,* 256 U. S. 314, 318; *Rowley* v. *Chicago & Northwestern R. Co.,* 293 U. S. 102; *James* v. *Dravo Contracting Co.,* 302 U. S. 134, 138–140; *Nippert* v. *Richmond,* 327 U. S. 416, 423–424. The same principle applies to indi-

viduals engaged in business within the state. *Ficklen* v. *Shelby County Taxing District*, 145 U. S. 1; *Shaffer* v. *Carter*, 252 U. S. 37; *Travis* v. *Yale & Towne Mfg. Co.*, 252 U. S. 60. See also *Haavik* v. *Alaska Packers Assn.*, 263 U. S. 510, where license and poll taxes were imposed on an individual who was working in Alaska but was not a resident or domiciliary there.

[19] Compare *Norton Co.* v. *Department of Revenue*, 340 U. S. 534, with *International Harvester Co.* v. *Department of Treasury*, 322 U. S. 340; *McGoldrick* v. *Berwind-White Coal Mining Co.*, 309 U. S. 33, and *McGoldrick* v. *Felt & Tarrant Mfg. Co.*, 309 U. S. 70.

[20] Compare *Southern Pacific Co.* v. *Gallagher*, 306 U. S. 167, 180–181, with *General Trading Co.* v. *State Tax Comm'n*, 322 U. S. 335; *Nelson* v. *Sears, Roebuck & Co.*, 312 U. S. 359; *Nelson* v. *Montgomery Ward & Co.*, 312 U. S. 373, and *Felt & Tarrant Mfg. Co.* v. *Gallagher*, 306 U. S. 62.

MR. JUSTICE DOUGLAS, with whom THE CHIEF JUSTICE, MR. JUSTICE BLACK and MR. JUSTICE CLARK concur, dissenting.

The States have been increasingly turning to sales and use taxes to raise the revenues they need to educate, protect, and serve their growing number of citizens. Unless the States can collect a sales or use tax upon goods being purchased out-of-state, there is a fertile opportunity for the citizen who wants state benefits without paying taxes to buy out-of-state. And there are just-across-the-state-line merchants who capitalize upon this opportunity. After today's decision there will be more.

I see no constitutional difficulty in making appellant a tax collector for Maryland under the general principles announced in *General Trading Co.* v. *Tax Commission*, 322 U. S. 335. When appellant's sales clerks make out the sales slips and arrange for the shipment of the purchased goods, they surely will know which are destined for Maryland, which for some other State. Hence to make appellant add the Maryland use tax to the bill when the purchaser requests that the goods be shipped to Maryland is only a minimal burden. Appellant will be paid

for its trouble.[1]  If liability were sought to be imposed under circumstances indicating that appellant had been taken by surprise or treated unfairly, different considerations would come into play.  But appellant in this case pleads immunity, not ignorance of the Maryland law nor harshness in its application.

This is not a case of a minimal contact between a vendor and the collecting State.  Appellant did not sell cash-and-carry without knowledge of the destination of the goods; and its delivery truck was not in Maryland upon a casual, nonrecurring visit.  Rather there has been a course of conduct in which the appellant has regularly injected advertising into media reaching Maryland consumers and regularly effected deliveries within Maryland by its own delivery trucks and by common carriers.[2]

Jurisdiction over appellant in this suit was obtained when its motor vehicle was attached while it was being used in Maryland.  *Pennoyer* v. *Neff,* 95 U. S. 714; *Ownbey* v. *Morgan,* 256 U. S. 94.  If appellant chooses to keep out of Maryland entirely, then the Maryland courts will of course have no jurisdiction over it.  But as long as appellant chooses to do some business there, I see nothing in the Due Process Clause which would prevent Maryland from making it a collector for taxes on sales which appellant knows are destined for Maryland homes.

---

[1] The Maryland statute provides that the vendor-collector may retain 3 percent of the gross tax as compensation for collection and remittance expenses.  Flack's Md. Ann. Code, 1951, Art. 81, § 384.

[2] The parties stipulated that appellant advertises in Maryland, both by Delaware newspapers which circulate across the state line and by direct mail to Maryland customers.  It was also stipulated that, over a four-and-a-half-year period, at least $12,000 worth of merchandise was sold by appellant to Maryland purchasers for Maryland use.  Approximately two-thirds of this merchandise was delivered by appellant to its Maryland customers in a motor vehicle owned and operated by appellant.